NORTON OUTDOOR ADVERTISING, INC., APPELLEE, *v.*
VILLAGE OF ARLINGTON HEIGHTS ET AL., APPELLANTS.

[Cite as Norton Outdoor Advertising v. Arlington Heights
(1982), 69 Ohio St. 2d 539.]

(No. 81-583—Decided March 3, 1982.)

*Messrs. Jacobs, Kleinman, Seibel & McNally* and *Mr. Robert E. Jacobs,* for appellee.

*Mr. Calvin W. Prem,* director of law, for appellants.

CLIFFORD F. BROWN, J.   The issue presented herein is whether the ordinance in question unconstitutionally regulates the content of protected speech by restricting billboard advertising to the product or business conducted on the premises. We hold that it does.

## I.

Appellants assert that the ordinance in question is a valid exercise of the police powers of local self-government.

The authority of the municipality to regulate the erection of signs and billboards within its boundaries is not questioned. See R. C. 715.27(A). The control of the non-communicative aspects of the medium is a legitimate governmental interest.

See, *e.g.*, *Hilton* v. *Toledo* (1980), 62 Ohio St. 2d 394, in which this court held that the city had the power to prohibit the display of flashing portable advertising signs while allowing the display of permanent electric signs. However, the First and Fourteenth Amendments to the United States Constitution and Section 11, Article I of the Ohio Constitution foreclose a similar interest in controlling the communicative aspects. *Metro-Media, Inc.*, v. *San Diego* (1981),—U. S.—, 69 L. Ed. 2d 800, 811. By enacting Section 33(c), the village has exercised its general police powers in a manner that brings it into irreconcilable conflict with the constitutional protection accorded free speech.

We are presented with an ordinance which, on its face, attempts to regulate the content of protected speech. The ordinance requires the content of the proposed expression to conform to the provisions of Section 33(c), (viz., "[t]he advertisement * * * shall pertain only to the [on-site] business * * * "). In prohibiting all forms of offsite billboard advertising, the ordinance is thus inescapably directed to the content of protected speech.

Strictures designed to stifle the free flow of information by regulating the content of expression are inherently inimical to the First Amendment's avowed purpose of preserving an uninhibited marketplace of ideas. See *Consolidated Edison Co.*, v. *Public Service Comm.* (1980), 447 U. S. 530; *Virginia State Pharmacy Bd.* v. *Virginia Citizens Consumer Counsel* (1976), 425 U. S. 748; *Cincinnati* v. *Black* (1966), 8 Ohio App. 2d 143.

The ordinance in question infringes upon both the plaintiff-appellee's right to communicate and the public's right to receive a variety of political, economic, social, and philosophical messages. The presumption of validity traditionally accompanying local government's exercise of its police power must therefore fail.

## II.

The village's ban on off-premise advertising has consequences on both commercial and non-commercial speech. Due to the different treatment accorded commercial and non-commercial speech, we will consider the effect of the ordinance on each.

542

## A.

By excluding all but one type of content, the ordinance proscribes not only commercial advertisements but has the operable effect of banning those messages traditionally characterized as "pure speech" as well. The result is a total ban on non-commercial speech.

Under the present regulatory scheme, a greater degree of protection is afforded to commercial speech than is afforded to non-commercial speech. The use of on-site billboards to carry commercial messages related to the commercial use of the premises is freely permitted, but the use of otherwise identical billboards to carry non-commercial messages is prohibited. This result clearly cannot be tolerated. As the United States Supreme Court recently stated, at page 818, in *Metro-Media* v. *San Diego, supra:*

" * * *Insofar as the city tolerates billboards at all, it cannot choose to limit their content to commercial messages; the city may not conclude that the communication of commercial information concerning goods and services connected with a particular site is of greater value than the communication of non-commercial messages."

## B.

Not only does the ordinance in question unduly limit non-commercial speech, it also fails to meet the test governing restrictions on commercial speech articulated by the United States Supreme Court in *Central Hudson Gas & Elec.* v. *Pub. Service Comm.* (1980), 447 U. S. 557.

Commercial speech has consistently been accorded a lesser degree of protection than non-commercial speech. *Ohralik* v. *Ohio State Bar Assn.* (1978), 436 U. S. 447, at 456. However, absent a claim of misleading or unlawful communication, the government must still assert a substantial interest to be achieved by the restriction on commercial speech. *Central Hudson Gas & Elec., supra,* at 566. This the village failed to do.

The proper approach to be taken in determining the validity of any restriction on commercial speech is that which was articulated in *Central Hudson Gas & Electric, supra, i.e.,* " * * * [t]he protection available for [a] particular commercial

expression turns on the nature both of the expression and of the governmental interests served by its regulation." (447 U. S. at 563.)

The village offered no proof—either demonstrative or testimonial—which bore on the issue of the substantial goals the ordinance sought to implement. Nor was any rationale articulated as to how the ordinance furthered any substantial governmental interest. This court refuses to speculate as to the purpose or intended effect sought to be achieved by the village legislators.

Because the ordinance in question reaches too far into the realm of protected speech, we conclude that it is unconstitutional on its face.

The judgment of the Court of Appeals is therefore affirmed.

*Judgment affirmed.*

CELEBREZZE, C. J., W. BROWN and SWEENEY, JJ., concur.

HOLMES and KRUPANSKY, JJ., concur in part and dissent in part.

LOCHER, J., dissents.

HOLMES, J., concurring in part and dissenting in part.

Based upon the recent plurality opinion of the United States Supreme Court in *Metro-Media, Inc.,* v. *San Diego* (1981),—U. S.—, 69 L. Ed. 2d 800, I must concur in the judgment, and that part of this court's opinion holding that the reasonable interpretation of Section 33(c) of Arlington Heights Ordinance No. 14-1967 would conclude that it unconstitutionally limits non-commercial communication in that village. Such messages would not be completely prohibited under the ordinance in that such non-commercial, as well as commercial, communications or advertisements could be located upon a billboard "against or immediately next to blank walls of buildings or structures surrounding in whole or in part bona fide parking lots * * * ." However, such a limitation is more restrictive than is provided for commercial advertising and, therefore, pursuant to the aforestated holding of the

United States Supreme Court would not pass constitutional muster, as such section related to the First Amendment.

I dissent from that portion of the opinion of this court which holds that the ordinance under consideration here would not meet the test governing restrictions on commercial speech. As stated by the majority here, commercial speech has consistently been accorded a lesser degree of protection than non-commercial speech. *Ohralik* v. *Ohio State Bar Assn.* (1978), 436 U. S. 447; *Central Hudson Gas & Elec.* v. *Pub. Service Comm.* (1980), 447 U. S. 557.

In *Metro-Media, supra,* at page 815, Justice White, in announcing the judgment of the court, points out the four-part test for determining the validity of government restrictions on commercial speech as distinguished from more fully protected speech: "(1) The First Amendment protects commercial speech only if that speech concerns lawful activity and is not misleading. A restriction on otherwise protected commercial speech is valid only if it (2) seeks to implement a substantial governmental interest, (3) directly advances that interest, and (4) reaches no farther than necessary to accomplish the given objective."

Applying these criteria to the facts to be found within the application of the San Diego ordinance, Justice White stated:

"There can be little controversy over the application of the first, second, and fourth criteria. There is no suggestion that the commercial advertising at issue here involves unlawful activity or is misleading. Nor can there be substantial doubt that the twin goals that the ordinance seeks to further—traffic safety and the appearance of the city—are substantial governmental goals. It is far too late to contend otherwise with respect to either traffic safety, *Railway Express Agency, Inc.* v. *New York,* 336 U. S. 106 * * * (1949), or esthetics, see *Penn Central Transportation Co.* v. *New York City,* 438 U. S. 104 * * * (1978), *Village of Belle Terre* v. *Boraas,* 416 U. S. 1 * * * (1973); *Berman* v. *Parker,* 348 U. S. 26, 33 * * * (1954). Similarly, we reject appellants' claim that the ordinance is broader than necessary and, therefore, fails the fourth part of the *Central Hudson* test. If the city has a sufficient basis for believing that billboards are traffic hazards and are unattractive, then obviously the most direct and perhaps the only effec-

tive approach to solving the problems they create is to prohibit them. The city has gone no farther than necessary in seeking to meet its ends. Indeed, it has stopped short of fully accomplishing its ends: It has not prohibited all billboards, but allows on-site advertising and some other specifically exempted signs." *Id.*

In like manner, here the ordinance of Arlington Heights would seek to directly implement a substantial governmental interest, that of traffic safety and the appearance of the village. Also, the ordinance here considered does not completely prohibit commercial advertising. It permits such advertising at the site of such business enterprise, and also upon billboards placed on blank walls of buildings or structures next to parking lots. In my view, this facet of the ordinance would be completely proper and should be held constitutional, if at all severable from the tainted portion.

KRUPANSKY, J., concurs in the foregoing concurring and dissenting opinion.

LOCHER, J., dissenting.   For the reasons stated in his partial dissent from the majority's opinion, I join with Justice Holmes in concluding that Section 33(c) of Arlington Heights Ordinance No. 14-1967 in no way infringes on the protection afforded commercial speech under both the United States and Ohio Constitutions. As I find erroneous, however, the court's invocation, to invalidate the ordinance, of the United States Supreme Court decision in *Metro-Media, Inc.,* v. *San Diego* (1981), _____ U. S. _____, 69 L. Ed. 2d 800, I must dissent from the majority *in toto.* The ordinance in question does not work an invidious effect on non-commercial speech as did that which the court reviewed in *Metro-Media.*

In order to evaluate the constitutionality of the subject ordinance as it impacts on non-commercial speech, two questions must be posed and properly answered: (1) does the ordinance tend to promote one particular viewpoint over another? See *First National Bank* v. *Bellotti* (1978), 435 U. S. 765; *Madison School Dist.* v. *Wisconsin Employment Relations Commission* (1976), 429 U. S. 167; (2) does the ordinance determine or in any fashion circumscribe the agenda for social, religious or other non-commercial discourse? See *Carey* v. *Brown* (1980),

447 U. S. 455; *Police Dept. of Chicago* v. *Mosley* (1972), 408 U. S. 92. If it should be determined that a law which restricts freedom of expression neither favors (nor disfavors) a particular viewpoint nor selects the topics for public discussion, no violation of the First Amendment and its guarantee of free speech has occurred. *Metro-Media, supra,* at 849 (Burger, C. J., dissenting).

The court, in *Metro-Media, supra,* held that the San Diego ordinance which, like that in the case *sub judice,* prohibited off-site advertising was unconstitutional. The court found that the San Diego ordinance permitted certain non-commercial exceptions to the ban and, thus, prescribed the non-commercial topics to be publicly aired. The court stated: "Although the city may distinguish between the relative value of different categories of commercial speech, the city does not have the same range of choice in the area of noncommercial speech to evaluate the strength of, or distinguish between, various communicative interests. [Citations omitted.] * * * With respect to noncommercial speech, the city may not choose the appropriate subjects for public discourse: 'To allow a government the choice of permissible subjects for public debate would be to allow that government control over the search for political truth.' *Consolidated Edison Co., supra,* 447 U. S. at 538, 100 S. Ct. at 2333." *Metro-Media, supra,* at 819. That San Diego, by permitting certain non-commercial exceptions to its general ban on off-site advertising, effectively set the agenda for public discussion, was the primary basis for the court's ruling in *Metro-Media. Metro-Media, supra,* at 851 (Burger, C. J., dissenting).

The village of Arlington Heights, however, is guilty of no such violation. In its ordinance prohibiting off-site advertising, the village legislated no exceptions. No non-commercial advertising of any type was exempted from the law's scope and effect. The village clearly, then, could not be said to have discriminated between various non-commercial messages, to have favored a particular viewpoint or to have limited or selected the topics for public discourse. The United States Supreme Court's holding in *Metro-Media* is, therefore, inapposite to the instant case.

Moreover, the proscription against non-commercial bill-

board advertising does not rise to the level of constitutional error merely because one medium of non-commercial speech has been foreclosed. The freedom of expression constitutionally guaranteed the residents of Arlington Heights has not been impermissibly infringed as proponents of social, religious and other non-commercial issues still enjoy ample access to other means of communication. As Chief Justice Burger wrote, dissenting in *Metro-Media, supra,* at 849-850: "These same [non-commercial] messages can reach an equally large audience through a variety of other media: newspapers, television, radio, magazines, direct mail, pamphlets, etc. True, these other methods may not be so 'eye-catching'—or so cheap—as billboards, but there has been no suggestion that billboards heretofore have advanced any particular viewpoint or issue disproportionately to advertising generally." (Footnote omitted.) The identical observation may be made in the case *sub judice.* Furthermore, as it is an irrefutable proposition of both federal and state law that a municipal authority may regulate the non-communicative aspects of free speech in general and billboards in particular, the action of the village of Arlington Heights in restricting billboard usage is rendered even more constitutionally inoffensive. See *Kovacs* v. *Cooper* (1949), 336 U. S. 77; *Hilton* v. *Toledo* (1980), 62 Ohio St. 2d 394; R. C. 715.27(A).

Finally, it has clearly been established that traffic control and the advancement of esthetic concerns are legitimate and substantial governmental interests, well within the proper scope of the state's regulatory and police powers. *Railway Express Agency, Inc.,* v. *New York* (1949), 336 U. S. 106; *Penn Central Transportation Co.* v. *New York City* (1978), 438 U. S. 104; *Berman* v. *Parker* (1954), 348 U. S. 26. Moreover, contrary to the majority's holding, substantial evidence of the General Assembly's intent to control traffic or advance esthetic interests through an ordinance regulating billboards need not be proffered. Such intent may be inferred "as a matter of law." *Metro-Media, supra,* at 815. Consequently, as billboards are proper subjects of state regulation, the validity of the village of Arlington Heights' ordinance proscribing, for reasons of traffic control and esthetics, all but on-site commercial advertising is beyond reproach. That the ordinance per-

mits only on-site commercial advertising creates no constitutional infirmity.

The First Amendment is not violated when a governmental authority, which may properly limit access to a medium of expression, imposes such restriction on non-commercial speech alone. The result remains unchanged even though non-commercial speech is afforded greater constitutional protection than its counterpart. It was stated by Chief Justice Burger, in his dissent in *Metro-Media, supra,* at 852-853:

"No case in this Court creates, as the plurality suggests, a hierarch of types of speech in which, if one type is actually protected through legislative judgment, the Constitution compels that judgment be exercised in favor of all types ranking higher on the list. * * * The Constitution does not require any governmental entity to reach the limit of permissible regulation solely because it has chosen to do so in a related area."

In the case *sub judice,* the village of Arlington Heights exercised its complete discretion in the area of non-commercial billboard advertising but only part of its discretion in the area of commercial billboard advertising. As the village acted in consonance with and not in excess of its police power, it committed no constitutional error, the fact that it treated commercial advertising more favorably, notwithstanding. The village acted reasonably in establishing on-site commercial advertising as the sole legitimate exception to its policy of traffic control and esthetic betterment.

As I find the ordinance enacted by the village of Arlington Heights a proper exercise of its police power and in no fashion violative of the right to free expression, I must dissent from the majority's decision in the instant case.