J. WILLIAM BURNS, COMMISSIONER OF
TRANSPORTATION *v.* JOHN P. BARRETT

SUPERIOR COURT
JUDICIAL DISTRICT OF HARTFORD-
NEW BRITAIN AT HARTFORD

FILE NOS. CV 860316429 S
CV 860316430 S

Memorandum filed July 28, 1988

*Joseph I. Lieberman,* attorney general, and *Kathryn A. Mobley,* assistant attorney general, for the plaintiff.

*Robinson & Cole,* for the defendant.

SATTER, J. This is an action brought by the plaintiff, J. William Burns, state commissioner of transportation, against the defendant, John P. Barrett, doing business as Barrett Outdoor Communications, seeking either an injunction ordering the defendant to remove certain outdoor advertising signs at three separate locations, or an order allowing the plaintiff to remove the signs and requiring the defendant to pay the cost of removal, and seeking the imposition of fines for erection of illegal advertising signs under General Statutes § 21-63 and § 13a-123 (j).

The defendant interposes special defenses attacking the constitutionality of the statutes; General Statutes § 13a-123 and § 21-50 et seq.; and the regulations restricting outdoor advertising, and the constitutionality of the manner of selective and arbitrary enforcement of those statutes and regulations against him. The defendant also counterclaims for the damages he sustained as a result of an ex parte temporary injunction issued by the court ordering him to cease constructing signs without a state permit.

Although the defendant challenges the facial validity of the Connecticut billboard statute and regulations, he has failed to show that they will have a different impact on the free speech rights of others than they have on him. His challenge is basically to the statutes and regulations as applied to him, and the court, therefore, will limit its analysis of constitutionality to the concrete case before it. *City Council* v. *Taxpayers for Vincent,* 466 U.S. 789, 801–803, 104 S. Ct. 2118, 80 L. Ed. 2d 772 (1984). Each sign presents separate factual and constitutional issues.

I

On or about April 19, 1985, the defendant applied to the plaintiff, pursuant to § 21-50, for permission to erect an off-premises outdoor advertising sign at 226–228 Stratford Avenue, Bridgeport. The proposed sign was V-type and was to face both northbound and southbound traffic on Interstate 95. The plaintiff undertook a field investigation and determined that the proposed sign facing southbound traffic on I-95 was within 500 feet of other existing and permitted outdoor advertising signs visible from southbound traffic on I-95. Accordingly, the plaintiff denied the defendant's application as violating department of transportation regulations. A month later the defendant applied for a permit to erect a sign facing northbound traffic on I-95, and the plaintiff approved that application. Thereafter, the defendant built an off-premises advertising sign with panels facing both northbound and southbound traffic. Upon discovering the sign facing southbound traffic erected without a permit, the plaintiff ordered the defendant to remove it, and when the defendant failed to do so, the plaintiff instituted the present action.

Section 13a-123c empowers the plaintiff to promulgate regulations for the control of outdoor advertising signs along interstate highways. Section 13a-123-5 of the Regulations of Connecticut State Agencies provides that in zoned industrial or commercial areas, such as Stratford Avenue, "(a) Spacing between sign structures along each side of the highway shall be a minimum of five hundred feet except that this spacing shall not apply to signs which are separated by a building or other obstruction in such a manner that only one sign located within the minimum spacing distance is visible from the highway at any one time." Section

13a-123-2 (m) defines "visible" as meaning "capable of being seen, whether or not legible, without visual aid by a person of normal visual acuity."

There being a conflict in the testimony of the plaintiff's and the defendant's witnesses as to the visibility of other signs within 500 feet of the defendant's sign facing southbound traffic, this court, with counsel, made an on-site viewing. This court concludes from its observation that the defendant's sign at Stratford Avenue is the only sign visible as one proceeds south on I-95 and that it does not violate the sign spacing regulations.

## II

On or about March 4, 1985, the defendant applied for a permit to erect an outdoor advertising sign with two panels at 187 Saltonstall Parkway, East Haven, on premises owned by Torello Tire Co., Inc. The proposed sign was a V-type structure with two bulletins, one facing northbound and one facing southbound traffic on I-95. Following a field investigation, the plaintiff determined that the structure was within 500 feet of an I-95 exit ramp and, accordingly, it denied the defendant's application as violative of the department of transportation regulations. The defendant, nevertheless, started to construct the sign. The plaintiff obtained an ex parte temporary injunction to restrain the defendant. When that injunction was dissolved, the defendant completed the sign. One panel advertises Torello Tires, and the other the Chowder Pot Restaurant. The restaurant is located several exits south on I-95.

Section 13a-123-5 (b) of the Regulations of Connecticut State Agencies provides: "Sign structures may not be located within five hundred feet of an interchange . . . ."[1] It is conceded that the sign is within

---

[1] Section 13a-123-5 (b) of the Regulations of Connecticut State Agencies also provides: "The distance requirement from an interchange . . . shall not apply

the proscribed distance from the interchange. The regulations also provide in § 13a-123-7 that certain signs are permitted in protected areas on interstate highways: official signs giving directional and other official information, and on-premises signs. The latter are defined as those "which advertise the sale or lease of, or activities being conducted upon, the real property where the signs are located. . . . Not more than one such sign, visible to traffic proceeding in any one direction on any one interstate . . . highway, and advertising activities being conducted upon the real property where the sign is located, may be permitted under this section more than fifty feet from the advertised activity. Signs permitted under this section may display trade names." Regs., Conn. State Agencies § 13a-123-7 (2).

The plaintiff concedes the legality of the Torello Tire sign because it advertises a business being conducted on premises where the sign is located, but he demands the removal of the Chowder Pot Restaurant sign because it advertises an off-premises business and so violates the distance requirement of § 13a-123-5 (b).

As early as 1921, Connecticut established a system of regulating outdoor advertising signs along state highways. Public Acts 1921, c. 79, p. 3092. In 1959 the legislature enacted General Statutes § 13a-123 et seq. in response to a federal law providing bonus funds for highway construction to states controlling billboards on federally funded and state limited access highways. Among the purposes to be served were traffic safety and preservation of natural beauty. Those sections were amended in 1967 to conform to changes in the 1965 federal Highway Beautification Act, 23 U.S.C. § 131.

within the boundaries of a municipality with a population of forty thousand or more according to the 1960 federal census if the state deems such to be consistent with the customary use in the area." East Haven had a population of 25,028 in 1980, so this exception does not apply.

Outdoor advertising signs have a dual nature. On the one hand they are large, immobile, and permanent structures that create a unique set of problems for land use planning development. On the other hand, they are means of communication and invoke elements of speech protected by the first amendment. The government's interest in regulating the noncommunicative aspects of billboards must be reconciled with the constitutional right of expression. *Metromedia, Inc.* v. *San Diego,* 453 U.S. 490, 502, 101 S. Ct. 2882, 69 L. Ed. 2d 800 (1981).

While the United States Supreme Court for a long time did not include commercial speech within the mantle of the first amendment; see, e.g., *Valentine* v. *Chrestensen,* 316 U.S. 52, 54, 62 S. Ct. 920, 86 L. Ed. 1262 (1942); in 1976 the court explicitly abandoned that position and held that speech proposing or promoting a commercial transaction was entitled to a measure of constitutional protection. *Virginia Pharmacy Board* v. *Virginia Citizens Consumer Council, Inc.,* 425 U.S. 748, 759–62, 96 S. Ct. 1817, 48 L. Ed. 2d 346 (1976). The court has stated, however: "[C]ommercial and noncommercial communications, in the context of the First Amendment, have been treated differently." *Metromedia, Inc.* v. *San Diego,* supra, 506. As for commercial speech, the court has adopted a four part test for governmental restrictions upon it: (1) the commercial speech must concern a lawful activity and not be misleading; if it meets that criterion, then a restriction is only valid if it, (2) seeks to implement a substantial governmental interest, (3) directly advances that interest, and (4) reaches no further than necessary to accomplish the given objective. *Central Hudson Gas & Electric Corporation* v. *Public Service Commission,* 447 U.S. 557, 563–66, 100 S. Ct. 2343, 65 L. Ed. 2d 341 (1980).

In the leading case of *Metromedia, Inc.* v. *San Diego,* supra, the court had to determine the constitution-

ality of a San Diego ordinance banning all outdoor advertising displays within the city, except for on-site commercial advertising and twelve other very limited exceptions. With respect to the ordinance's application to commercial billboards, the plurality opinion of the court recognized that the objectives of traffic safety and maintaining the appearance of the city "are substantial governmental goals." Id., 507–508. The plurality opinion also held that the ordinance directly advanced those goals, although the concurring opinion of Justices Brennan and Blackmun would have required more evidence on that point.

In the case before this court, there was substantial evidence that commercial signs at highway interchange areas contribute to accidents. The chief transportation engineer for the department of transportation testified: "[I]n interchange areas, especially major highways of this type, the decision-making is very intense at this point. A driver must make up his mind, his or her mind, whether they are going to exit at that point or they are going to go forward to a further destination. They have to be concerned about the driver that does want to exit but is in the wrong lane and may dart across their path.

"These are intense areas. Those are the areas that have the greatest amount of accidents on expressways.

"Therefore, the regulation asking that the signs not be erected within five hundred feet of these on and off ramps is designed to clear the boards, as you will, and leave that area as open as possible for intelligent decision-making by the driver . . . ."

This court finds that the 500 foot protected area reaches no farther than necessary to accomplish the twin goals of safety and aesthetics. The defendant argues that those goals are denigrated by the state's permitting on-site advertising within the protected area. A

number of justifications have been advanced for the exception: the content of off-site advertising signs is changed more often, creating a more acute problem; *Railway Express Agency, Inc.* v. *New York,* 336 U.S. 106, 110, 69 S. Ct. 463, 93 L. Ed. 533 (1949); on-site signs are "in actuality a part of the business itself, just as the structure housing the business is a part of it . . ."; *United Advertising Corporation* v. *Borough of Raritan,* 11 N.J. 144, 150, 93 A.2d 362 (1952); an on-site exception is self-limiting since the sign is required to relate to an activity on the premises; and the state may "reasonably conclude that a commercial enterprise —as well as the interested public—has a stronger interest in identifying its place of business and advertising the product or services available there than it has in using or leasing its available space for the purpose of advancing commercial enterprises located elsewhere." *Metromedia, Inc.* v. *San Diego,* supra, 512.

In this case the evidence was that on-site advertising within interchanges, while distracting, was less so and less of a traffic hazard than off-site advertising.

This court concludes, as did the United States Supreme Court in *Metromedia, Inc.* v. *San Diego,* supra, that "offsite commercial billboards may be prohibited while onsite commercial billboards are permitted." See the cases cited in *Metromedia, Inc.* v. *San Diego,* supra, 511 (sustaining the distinction between off-site and on-site advertising); see also *State by Spannaus* v. *Hopf,* 323 N.W.2d 746 (Minn. 1982). To the same effect is *Murphy, Inc.* v. *Westport,* 131 Conn. 292, 303–305, 40 A.2d 177 (1944).

Thus, this court finds that the regulation barring commercial signs within 500 feet of an interchange is constitutionally valid and that defendant's off-premises sign advertising the Chowder Pot Restaurant violates that regulation.

## III

On or about March 4, 1985, the defendant applied for a permit for off-premises outdoor advertising signs at 38 Bradley Street, East Haven. The proposed sign was to be a V-type ground structure with two panels, one facing northbound and one facing southbound traffic on I-95, located on an empty piece of land. Following a field investigation, the plaintiff determined that the structure was within 500 feet of an I-95 exit ramp and, accordingly, it denied the application as violative of § 13a-123-5 (b) of the Regulations of Connecticut State Agencies. The defendant, nevertheless, started to construct the sign. The plaintiff sought a temporary injunction to restrain the defendant. When that injunction was denied, the defendant completed the sign. One panel advertises Red Writer and the other has the American flag and the message, "We owe a great debt to Vietnam Vets."

The facts are undisputed that the sign is within the protected area of an interchange and does not advertise "activities being conducted upon the real property where the signs are located." Regs., Conn. State Agencies, § 13a-123-7 (a). The defendant, however, contends that at least the Vietnam vets message is an exercise of free speech protected by the first amendment of the United States constitution and article first, § 5, of the Connecticut constitution.

The constitutional right of free speech "does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired." *Heffron* v. *International Society for Krisna Consciousness, Inc.,* 452 U.S. 640, 647, 101 S. Ct. 2559, 65 L. Ed. 2d 298 (1981). That case upheld a restriction confining adherents of the Krisna religion to selling or distributing their wares at a fixed location within state

fair grounds. Similarly, in *City Council* v. *Taxpayers for Vincent,* 466 U.S. 789, 104 S. Ct. 2118, 80 L. Ed. 2d 772 (1984), the court upheld a city ordinance prohibiting the posting of signs on public property as a content-neutral restriction designed to prevent visual clutter.

The general rule is that any form of expression, whether oral, written or symbolic conduct, can be constitutionally limited only by reasonable time, place and manner restrictions. As the United States Supreme Court said in *Clark* v. *Committee for Creative Non-Violence,* 468 U.S. 288, 293, 104 S. Ct. 3065, 82 L. Ed. 2d 221 (1984): "We have often noted that restrictions of this kind are valid provided that they are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information."

This court has above found that the regulations prohibiting billboards within 500 feet of highway interchanges serve the important objectives of traffic safety and aesthetics and that they are narrowly drawn to achieve those objectives. Moreover, the regulations not only leave unaffected many communications media other than outdoor advertising signs (such as radio, television, newspapers, leaflets, etc.), but also allow outdoor advertising signs in a wide variety of other locations. In fact, the defendant himself testified to numerous ideological messages that he has proclaimed on outdoor advertising signs in authorized locations.

Finally, as the regulations are here applied at 38 Bradley Street, they are content-neutral. The panel advertising Red Writer and the panel stating the patriotic message are both violative of the regulations, without distinction as to commercial or noncommercial communications.

*Metromedia, Inc.,* is distinguishable precisely on this point. In that case the United States Supreme Court held the San Diego ordinance that banned virtually all billboards, with the notable exception of on-site commercial advertising, to be violative of the first amendment because by that exception it favored commercial speech over noncommercial speech. The court said: "As indicated above, our recent commercial speech cases have consistently accorded noncommercial speech a greater degree of protection than commercial speech. San Diego effectively inverts this judgment, by affording a greater degree of protection to commercial than to noncommercial speech. There is a broad exception for onsite commercial advertisements, but there is no similar exception for noncommercial speech. The use of onsite billboards to carry commercial messages related to the commercial use of the premises is freely permitted, but the use of otherwise identical billboards to carry noncommercial messages is generally prohibited. . . . Insofar as the city tolerates billboards at all, it cannot choose to limit their content to commercial messages; the city may not conclude that the communication of commercial information concerning goods and services connected with a particular site is of greater value than the communication of noncommercial messages." *Metromedia, Inc.* v. *San Diego,* supra, 513.

In the present case, if the Vietnam vets message were placed on the sign at Saltonstall Parkway, where the Torello Tire advertisement is permitted, the issue dealt with in *Metromedia, Inc.,* would be presented. But since the sign at Bradley Street does not relate to any onsite activity and is within the protected area of the interchange, both panels, without regard to their content, are violative of the regulations.

The defendant would have this court declare the Connecticut statutes, § 13a-123 et seq. and § 21-50 et seq., and the pertinent regulations unconstitutional because

the on-site commercial advertising exception raises the possibility of favoring commercial speech over noncommercial speech under the *Metromedia, Inc.,* analysis. This has been the approach of the courts of some states, such as the Ohio Supreme Court in *Norton Outdoor Advertising, Inc.* v. *Arlington Heights,* 69 Ohio St. 2d 539, 433 N.E.2d 198 (1982). But the better wisdom is to apply constitutional principles to the facts of the case before the court. Here the facts as to the outdoor advertising signs at Saltonstall Parkway and Bradley Street, East Haven, do not establish a basis for declaring Connecticut's regulation of billboards unconstitutional.

IV

With respect to the Bridgeport sign, the defendant interposed a special defense to the effect that the plaintiff unconstitutionally discriminated against him by enforcing the statute and regulations against him in an arbitrary and selective manner. He introduced into evidence photographs of a number of signs in the Bridgeport and New Haven areas that violate the same 500 foot spacing regulations; Regs., Conn. State Agencies § 13a-123-5 (a); that the plaintiff claims the defendant's Bridgeport sign violates.

In the leading case of *Wayte* v. *United States,* 470 U.S. 557, 608, 105 S. Ct. 1524, 84 L. Ed. 2d 547 (1985), the United States Supreme Court held that claims of selective or arbitrary enforcement are "judge[d] . . . according to ordinary equal protection standards," and that in the absence of a facially discriminatory law, the plaintiff must show that the challenged application of the law has a discriminatory effect and is motivated by a discriminatory purpose.

The short answer is that this defense is moot because this court has found the defendant's Bridgeport sign not in violation of the law and regulations. The better answer is that the plaintiff proceeded against the defend-

ant because he put up the sign after being denied a permit. There is no showing in this case that the plaintiff acted with discriminatory intent against the defendant.

V

The defendant asserts that a permanent injunction should not be granted because the plaintiff has failed to prove irreparable harm and no adequate remedy at law.

When a statute and state regulations have been violated, a plaintiff seeking an injunction is relieved of the burden of alleging and proving irreparable harm and no adequate remedy at law under the rationale that " 'the enactment of the statute by implication assumes that no adequate alternative remedy exists and that the injury was irreparable, that is, the legislation was needed or else it would not have been enacted.' " *Conservation Commission* v. *Price,* 193 Conn. 414, 429, 479 A.2d 187 (1984), quoting *Crabtree* v. *Van Hise,* 39 Conn. Sup. 334, 338, 464 A.2d 865 (1983).

General Statutes § 13a-123 (i) grants the power to the commission of transportation to "order the removal of any advertising structure, sign, display or device along any interstate . . . highway erected in violation of this section." If it is not removed, the commissioner "may *cause* such structure, sign, display or device to be removed and the expense of such removal may be collected . . . *in an action* based on the provisions of this section . . . ." (Emphasis added.) General Statutes § 13a-123 (i). The statute clearly authorizes the plaintiff to seek an injunction to effectuate removal of offending billboards.

Finally, the defendant argues that the fine of not more than $100 authorized to be imposed for each violation under General Statutes §§ 13a-123 (j) and 21-63 constitutes an adequate legal remedy. There is no merit

to this defense. This court reads § 13a-123, empowering the commissioner to undertake legal action to "cause" removal of a sign, and §§ 13a-123 (j) and 21-63, imposing a fine, to be correlative and not mutually exclusive. Under this statutory scheme the court can both issue an injunction and impose a fine.

## VI

In light of the foregoing, this court herewith issues an injunction ordering the defendant, within thirty days from receipt of this decision, to remove the Chowder Pot Restaurant sign at 187 Saltonstall Parkway, East Haven, and to remove both signs at 38 Bradley Street, East Haven. If the defendant shall fail to do so, the defendant having already been given the requisite fourteen-day notice, the plaintiff may arrange to have such signs removed and to collect from the defendant the expense of such removal. Also, because all three signs are in violation of the law, and particularly because the defendant deliberately erected them after having been denied a permit, this court fines the defendant $100 for each sign, or a total of $300.

There being no merit to the defendant's counterclaim, judgment on it may enter in favor of the plaintiff.