STEVEN G. M. BIRO ET AL. *v.* THOMAS W.
HILL, JR., ET AL.
(13734)

PETERS, C. J., HEALEY, CALLAHAN, GLASS and HULL, Js.

Argued December 14, 1989—decision released February 20, 1990

*Kenneth D. Wallace,* for the appellants (plaintiffs).

*Robert G. Oliver,* with whom, on brief, was *Carolyn P. Gould,* for the appellees (defendant Sidley and Austin et al.).

GLASS, J. This appeal principally concerns the question of who constitutes a "necessary party" under Practice Book § 152 (3).[1] Specifically, the plaintiffs, Steven G. M. Biro and his wife Safiye Guzin Altiok, appeal from a final judgment of the Superior Court, rendered March 27, 1989, striking the five counts of their amended complaint and dismissing their action due to their failure to join a "necessary party" pursuant to Practice Book § 152 (3). We find error.

"Where an appeal is taken from a judgment following the granting of a motion to strike, we take the facts to be those alleged in the amended complaint construed in a manner most favorable to the pleader." *Amodio* v. *Cunningham,* 182 Conn. 80, 82, 438 A.2d 6 (1980). The amended complaint in this case reveals the following facts. Biro is a citizen of the state of Connecticut and is a practicing attorney who was duly admitted in Connecticut in 1974. Effective in August, 1979, Biro entered into a written partnership agreement with Thomas W. Hill, Jr., of the law firm of Hill and Spoliansky, which had offices located at Muscat, Oman; Dubai, United Arab Emirates; and New York, New

---

[1] Practice Book § 152 (3) reads as follows: "Whenever any party wishes to contest . . . (3) the legal sufficiency of any such complaint, counterclaim or cross complaint, or any count thereof, because of the absence of any necessary party . . . that party may do so by filing a motion to strike the contested pleading or part thereof."

York (hereinafter Oman partnership). The partnership agreement indicates that the Oman partnership wished to induce Biro to move to Oman to practice law as a partner in the firm. The agreement was not terminable by the partnership except on one year's notice, provided, however, that no such notice could be given unless Biro had been a partner for at least two years. The agreement included provisions for a guaranteed minimum yearly payment plus 20 percent of profits, a $10,000 annual credit and accrual of equity in the partnership. Liberal fringe benefits such as insurance, automobiles, a staffed villa for residence, travel and vacation were also set forth. In addition, effective August, 1979, Altiok, a computer expert, entered into a separate and distinct agreement with the Oman partnership to engage in the importation, distribution and service of computers in Oman and the United Arab Emirates.

The plaintiffs moved to Oman in October, 1979. At that time, Biro became the partner in charge of the Oman office, and was held out to clients, prospective clients and the world as such. By early 1981, however, the plaintiffs allege that Sidley and Austin, a large law firm with offices worldwide, began surreptitious negotiations with Hill. Specifically, the plaintiffs assert that Sidley and Austin induced Hill to enter into a secret agreement by which Hill became a partner in Sidley and Austin. In return, Sidley and Austin acquired and took over the law practice and assets of the Oman partnership, and Biro was excised from the partnership.

Biro alleges that Sidley and Austin and four of its partners[2] (hereinafter Sidley and Austin) "successfully induced the breach of the Partnership Agreement and wantonly and recklessly disregarded that agreement

---

[2] The four named partners are Mark A. Angelson, H. Blair White, Maurice J. Miller and William O. Fifield.

and the fiduciary obligation owed to [him]." In particular, Biro brings three counts against Sidley and Austin: (1) inducing breach of contract; (2) conversion and misappropriation of property; and (3) interference with economic expectations.[3] Additionally, Altiok brings two counts against Sidley and Austin: (1) inducing breach of contract; and (2) misappropriation of property.[4] The plaintiffs allege Sidley and Austin to be solely liable for each of the two claims of inducing breaches of the contracts, and to be jointly and severally liable for the other three claims.

Personal service of process pursuant to General Statutes § 52-57 (b) was made upon the partnership of Sidley and Austin and four of its partners, including Mark A. Angelson, a partner who resides in Greenwich. In addition, Hill was also named as a defendant, and both plaintiffs alleged a breach of contract count against him. Moreover, the plaintiffs included Hill as a joint tortfeaser with Sidley and Austin in three of the counts.[5] Consequently, service was made upon Hill at the Chicago headquarters of Sidley and Austin. Thereafter, however, the plaintiffs' counsel was advised that Hill was no longer a partner in Sidley and Austin and had become a resident of the state of Florida. As a

[3] As the basis for his claim of conversion and misappropriation of property, Biro contends that his property in the Oman partnership, as well as other property loaned to the partnership and used in its offices, and property maintained in his private residence in Oman, were converted by Sidley and Austin to its own use. In addition, as the basis for his claim of tortious interference with business expectations, Biro maintains that Sidley and Austin and Hill made threats against his safety, liberty and body, and those of his family. He claims that these actions were aimed at barring him from Oman and preventing him from practicing law there or in other Near East countries. As a result of the alleged acts, Biro claims that he was not only compelled to abandon his efforts to continue to practice law in the Near East, but forced to leave the area.

[4] Altiok alleges that Sidley and Austin induced the breach of her computer agreement, and converted property that belonged to her in Oman.

[5] The plaintiffs included Hill in all of their counts except those concerning inducing breach of contract.

result, personal service on Hill was not possible, and the two breach of contract counts that applied solely to him were dropped by the plaintiffs.

Sidley and Austin then filed a motion under Practice Book § 152 (3) to strike all five remaining counts in the plaintiffs' amended complaint. In particular, Sidley and Austin contended that Hill was a "necessary party" within the meaning of § 152 (3). The trial court agreed that Hill was a necessary party, but instead of striking the amended complaint, stayed further proceedings for ninety days, during which time the plaintiffs were given the opportunity to file an action in the New York state courts and to attempt to obtain long-arm service over Hill in Florida. The trial court stated: "If it develops that . . . Hill cannot be made a party in New York, the stay will be lifted in Connecticut and the matter may then proceed in this court. If . . . Hill is in fact made a party to the New York action, or, alternatively, plaintiffs do not start an action in New York, then the motion to strike will be granted." The plaintiffs, however, chose to forego bringing a New York action and requested that a final judgment be rendered in order that this appeal might be taken.

On appeal,[6] the plaintiffs argue that the trial court erred in ruling that Hill was a "necessary party" for the purposes of § 152 (3). We agree. In *Sturman* v. *Socha,* 191 Conn. 1, 6-7, 463 A.2d 527 (1983), we defined "necessary parties" as " '[p]ersons having an interest in the controversy, and who ought to be made parties, in order that the court may act on that rule which requires it to decide on, and finally determine the entire controversy, and do complete justice, by adjusting all the rights involved in it. . . . [B]ut if their interests are separable from those of the parties before the court, so that the court can proceed to a decree,

---

[6] This appeal was originally filed in the Appellate Court, but pursuant to Practice Book § 4023, this court transferred the appeal to itself on July 6, 1989.

and do complete and final justice, without affecting other persons not before the court, the latter are not indispensable parties.' *Shields* v. *Barrow,* [58 U.S. (17 How.) 130, 139, 15 L. Ed. 158 (1854)] . . . ." In short, a party is "necessary" if its presence is "absolutely required in order to assure a fair and equitable trial." Id., 7.

In the instant case, because the trial court can "proceed to a decree, and do complete and final justice" without Hill's being joined in the suit, we hold that Hill is not a "necessary party." First, in the two counts of inducing breach of contract, the allegation of liability is solely against Sidley and Austin, and, therefore, Hill could not have been joined even if he resided in Connecticut. Second, prior to the enactment of the Connecticut Tort Reform Act, No. 86-338 of the 1986 Public Acts,[7] this court stated: "Where two or more persons unite in an act which constitutes a wrong to another, intending at the time to commit it, or in doing it under circumstances which fairly charge them with intending the consequences which follow, they incur a joint and several liability for the acts of each and all of the joint participants. . . . There is no apportionment of responsibility, and no right of contribution or indemnity between them. . . . One may be sued severally, or any or all together." *Sparrow* v. *Bromage,* 83 Conn. 27, 28–29, 74 A. 1070 (1910); see *Lamb* v. *Peck,* 183 Conn. 470, 472, 441 A.2d 14 (1981); *Gutowski* v. *New Britain,* 165 Conn. 50, 54, 327 A.2d 552 (1973). Thus, one defendant, under the doctrine of joint and several liability, could be held fully responsible for all damages.

In the present case, Sidley and Austin is alleged to be jointly and severally liable on the three remaining tort counts. Therefore, since the alleged harm occurred before the operative date of No. 86-338 of the 1986 Pub-

[7] The Connecticut Tort Reform Act, No. 86-338 of the 1986 Public Acts, provides for, inter alia, the right of contribution.

lic Acts,[8] the fact that Hill may also be liable on these three tort counts does not mean that Hill is a "necessary party." "When joinder is permitted . . . each tortfeasor may be sued severally, and held responsible for the damage caused, although other wrongdoers have contributed to it. The defendant cannot compel the plaintiff to make the others parties to the action, or complain because they have not been joined . . . ." W. Prosser & W. Keeton, The Law of Torts (5th Ed. 1984) p. 327; see, e.g., *Shredded Wheat Co.* v. *Kellogg Co.,* 26 F.2d 284, 286–87 (D. Conn. 1928); *Sox* v. *Hertz Corporation,* 262 F. Sup. 531, 532 (D.S.C. 1967); *Tower* v. *Camp,* 103 Conn. 41, 46–47, 130 A. 86 (1925); *Melichar* v. *Frank,* 78 S.D. 58, 62, 98 N.W.2d 345 (1959); *Farmers' State Bank* v. *Jeske,* 50 N.D. 813, 818, 197 N.W. 854 (1924). In sum, the plaintiffs can obtain full relief on the three tort counts without joining Hill, and, therefore, Hill's presence is not necessary for the court to "proceed to a decree, and do complete and final justice." *Sturman* v. *Socha,* supra, 7.[9]

There is error, the judgment dismissing the case is set aside and the case is remanded to the trial court for further proceedings not inconsistent with this opinion.

In this opinion the other justices concurred.

[8] The plaintiffs allege that Sidley and Austin perpetrated its tortious behavior in 1981, and the effective date of No. 86-338 of the 1986 Public Acts was October 1, 1986.

[9] The plaintiffs also raise a constitutional issue regarding their right to redress for injury. Given our disposition of the question of whether Hill is a "necessary party," we need not, however, examine this claim.

Furthermore, Sidley and Austin argues that the trial court's ruling may be affirmed on the alternate ground of forum non conveniens. As we stated in *Union Carbide Corporation* v. *Aetna Casualty & Surety Co.,* 212 Conn. 311, 319, 562 A.2d 15 (1989), "the doctrine of forum non conveniens vests discretion in the trial court to decide 'where trial will best serve the convenience of the parties and the ends of justice.' " Therefore, because the trial court has yet to rule on the question of forum non conveniens, it would be premature for this court to examine the issue at this juncture.