[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANT'S MOTION TO CITE IN
In this case, plaintiffs John Spear ("Spear") and the Spear Printing Company, Inc. ("Spear Printing") have sued defendant Summit Medical Center, Inc., f/k/a Summit Women's Center West, Inc. ("Summit"), for subjecting them to a vexatious civil lawsuit. They complain, more particularly, that from September 22, 1989 through December 6, 1989, Summit acted maliciously, without probable cause and with the intent to vex and harass them by bringing and maintaining against them a federal civil rights action[1] in which it accused them of combining and conspiring with their codefendants and unnamed others to violate the Hobbs Act,[2] the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"),[3] the Civil Rights Act of 1866,[4] and several provisions of State law by planning, carrying out and supporting a lengthy series of antiabortion protests at Summit's West Hartford clinic.
In the federal lawsuit, Summit alleged that Spear and Spear Printing played the following roles in the alleged CT Page 4300 conspiracy: During 1989, while Spear was working as the editor of the Orange County Post, a newspaper owned and published by Spear Printing in Washingtonville, New York, he wrote and published an editorial entitled "Northern Rednecks". In this editorial, Spear is claimed to have "deliberately and maliciously published an incorrect defamatory account" of an April 1, 1989 protest at Summit's West Hartford facility. According to Summit, this account was based on the report of Spear Printing employee Catherine A. Jersey, who had attended the protest in question and been arrested as a result thereof. Spear's alleged purpose for publishing Ms. Jersey's account was to further "the efforts of the Defendants and others to harass, intimidate and extort a less diligent or softened response from the West Hartford Police Department to future protest activities by the Defendants and others at Summit and elsewhere in the Town of West Hartford."
The plaintiffs remained defendants in Summit's federal action until December 6, 1989, when Summit unilaterally omitted them from its second amended complaint. In the interim, the plaintiffs claim that they became obligated for legal fees and other costs and expenses associated with the defense of Summit's action. For that reason, they have presented the following alternative claims for relief: a common-law demand for compensatory damages, punitive damages and interest; and a statutory demand, under General Statutes § 52-568(a), for double or treble damages plus attorney's fees.
Defendant Summit has now moved this Court under Practice Book § 85 and General Statutes §§ 52-102 and 52-103 to cite in the Town of West Hartford as a party defendant to this action. In support of this Motion, Summit has advanced two alternative legal claims: first, that the Town is a "necessary party" to this action "for a complete determination of the central question involved in this case, namely whether or not [the plaintiffs] were victims of vexatious litigation;" Motion at 2-3; and second, that "because . . . the Town may be liable for a significant percentage of [the plaintiffs'] damages, if any, . . . [c]iting the Town . . . into the present action as codefendant will be the most equitable and efficient way to determine the respective liability of Summit and the Town, as it will prevent the necessity of proceeding by way of a separate action for contribution or impleader." Id. at 3. CT Page 4301
Summit bases its Motion on the following claims of fact: 1) that the federal lawsuit here at issue was filed initially by the Town of West Hartford on June 29, 1989; 2) that Summit played absolutely no role in the Town's decision to file that lawsuit or to name Spear and Spear Printing as defendants therein; 3) that Summit did not intervene in the Town's lawsuit until the federal court granted its motion for permission to do so on August 24, 1989; 4) that Summit's right to intervene in the Town's lawsuit was "expressly conditioned upon its adopti[on of] the [Town's] original complaint, with only such modifications as were necessary to include [its] independent interests in the action;" Motion at 2; and 5) that consistent with the foregoing condition, Summit's intervening complaint of September 22, 1989 "mirrored the [Town's] original complaint" in every substantive way, including the naming of Spear and Spear Printing as defendants based on the allegations of the original complaint.
Against this background, Summit insists that the Town must be made a defendant to the instant lawsuit because the only reason the plaintiffs ever incurred any of the fees, costs and expenses they seek herein to recover was the Town's unilateral decision to name them as defendant's in its original complaint.
The plaintiffs oppose Summit's Motion for two reasons. Procedurally, they object to the "necessary party" aspect of Summit's claim on the ground that they very issue has already been fully litigated and decided in their favor in Judge L. Paul Sullivan's July 30, 1993 Memorandum of Decision on the defendant's Motion to Strike. Because Judge Sullivan rejected the defendant's earlier claim that the plaintiffs' complaint should be stricken "because of the absence of" the Town as a "necessary party" to this action, Practice Book § 152(3), the plaintiffs contend that the relevant law of this case has been decided, and this Court should be bound thereby.
Substantively, the plaintiffs simply argue, here as before Judge Sullivan, that the decision whether and whom to sue for allegedly subjecting them to a vexatious lawsuit is theirs alone to make and that this Court should not disturb or interfere with that decision. Defendant Summit, they further argue, must bear full responsibility for its own decision whether and how to intervene in the Town's federal action. In particular, it must be accountable for its own independent CT Page 4302 decision to name them defendants in its intervening complaint.
 I
Initially, the Court must reject the plaintiffs' procedural argument that the defendant's Motion must be denied because of Judge Sullivan's prior denial of the defendant's similarly grounded motion to strike. It is true, of course, that our Supreme Court has counselled that, "A judge should hesitate to change his own rulings in a case and should be even more reluctant to overrule those of another judge."Breen v. Phelps, 186 Conn. 86, 99 (1982). It is also time, however, that the Court has never authorized a judge to abdicate his personal responsibility to decide each issue which comes before him on its own legal merits, as best he can come to understand them. To the contrary, the Breen Court itself flatly stated that:
 "A judge is not bound to follow the decisions of another judge made at an earlier stage of the proceedings, and if the same point is again raised he has the same right to reconsider the question as if he had himself made the original decision." Santoro v. Kleinbarger, 115 Conn. 631, 638, 163 A. 107 (1932). This principle has been frequently applied to an earlier ruling during the pleading stage of a case such as that upon [a] motion to strike [,] . . . . [Citations omitted.] "Accordingly to the generally accepted view, one judge may, in a proper case, vacate, modify, or depart from an interlocutory order or ruling of another judge in the same case, upon a question of law." 46 Am.Jur.2d, Judges § 46; annot., 132 A.L.R. 14, 49.
Breen v. Phelps, supra at 98-99.
Against this background, this Court cannot rule as a matter of law that it lacks the power to decide a legal issue because another judge has previously decided it. Instead, it must carefully examine and independently decide each question presented for its decision, giving respectful consideration to the prior expressed views of others, but resisting temptation to "treat [those views] as an infallible guide" to its own resolution of the matter. Id. at 99. In this case, like all CT Page 4303 others, consistency is only a virtue if it leads to the correct result. Dawson v. Orange, 78 Conn. 96, 129, 61 A. 101
(1905) (If two judges should disagree on a question of law, "the important question is not whether there [is] a difference but which view [is] right.")
 II
In Biro v. Hill, 214 Conn. 1, 5-6 (1990), the Connecticut Supreme Court made the following pertinent observations as to who may be deemed a "necessary party" to a lawsuit:
 In Sturman v. Socha, 191 Conn. 1, 6-7, 463 A.2d 527
(1983), we defined "necessary parties" as "[p]ersons having an interest in the controversy, and who ought to be made parties, in order that the court may act on that rule which requires it to decide on, and finally determine the entire controversy, and do complete justice, by adjusting all the rights involved in it. . . . [B]ut if their interests are separable from those of the parties before the court, so that the court can proceed to a decree, and do complete and final justice, without affecting other persons not before the Court, the latter are not indispensable parties., Shields v. Barrow, [58 U.S. (17 How.) 130, 139, 15 L.Ed. 158 (1854)] . . . ." In short, a party is "necessary" if its presence is "absolutely required in order to assure a fair and equitable trial." Id., 7.
Under this test, the Town of West Hartford is not a "necessary party" to the plaintiffs' action because its interest in this controversy is entirely separable from that of defendant Summit.
The tort of "vexatious suit" is an intentional tort with three essential elements: (1) the prosecution of a civil lawsuit which terminates in favor of the party sued; 2) with malice; and 3) without probable cause. McCann v. Allen,105 Conn. 177, 185 (1926); Ives v. Bartholomew, 9 Conn. 309, 313
(1832). So defined, vexatious suit is the civil analog of malicious prosecution, differing from it only because of the civil contact in which it arises. Calvo v. Bartolotta,112 Conn. 396, 397 (1930); Vandersluis v. Weil, 176 Conn. 353, 356
CT Page 4304 (1978).
A person prosecutes a civil action when he initiates it or contributes materially to its prosecution. Fusario v.Cavallaro, 108 Conn. 40, 42 (1928). Thus he may be the original party who files a lawsuit, a person who joins another party in prosecuting a lawsuit or even a person who supports, the filing and/or maintaining of the lawsuit by his encouragement, his testimony and/or his financial support.Id. See also Zenik v. O'Brien 137 Conn. 592, 596 (1951). That a lawsuit does not ultimately prove to be successful does not foredoom all of its initiators or supporters to liability for vexatious suit. Rather, their individual liability depends directly and uniquely upon the mental state with which each of them acted individually. Specifically, to be liable for vexatious suit, the individual defendant must be shown to have acted with malice and without probable cause — matters which necessarily vary from plaintiff to plaintiff in every civil case.
Malice is the intent to vex, harass or annoy the target of the lawsuit. Bridgeport Hydraulic v. Pearson, 139 Conn. 186,195 (1952). Malice may be express or implied. Zitkovv. Zaleski, 102 Conn. 439, 446-47 (1925). It is express when it is accompanied by feelings of hatred or ill will and/or an intent to subject the party who is sued to embarrassment, humiliation and/or expense. Even, however, if there is no direct evidence of such hostile feelings and intention, malice can be inferred from a lack of probable cause. McGann v.Allen, supra at 187.
Here, as in the criminal context, probable cause is "knowledge of facts sufficient to justify a reasonable person in the belief that there are reasonable grounds for prosecuting an action." Vandersluis v. Weil, supra at 356. If a reasonable person in the actor's situation would have thought it reasonably likely that he had a valid cause of action against the defendant, then the actor cannot be said to have acted without probable cause when he filed his allegedly vexatious lawsuit. Paranto v. Ball, 132 Conn. 568, 571
(1946). If, however, a reasonable person in the actor's situation would not have had probable cause to believe that he had such a valid basis for initiating or otherwise prosecuting his lawsuit, then even in the absence of overt ill will towards the target of the lawsuit, his initiation or CT Page 4305 prosecution of that lawsuit is implicitly done with malice, thus making him liable for vexatious suit if the lawsuit terminates in favor of his opponent.
By contrast, even if a person files or maintains a lawsuit with express ill will towards his adversary, the proven existence of malice does not establish a lack of probable cause, for probable cause itself depends uniquely upon the sufficiency of the actor's factual basis for concluding that he has a meritorious lawsuit. McGann v.Allen, supra at 187. Whether or not a person is correct in his belief that his adversary has engaged in actionable conduct is not the ultimate issue in deciding whether or not the actor had probable cause. Id. at 186. What matters, instead, is the kind and quality of information on which the actor personally relied when he subjected his adversary to the lawsuit. To reiterate: if such information was sufficient to justify a reasonably prudent person in the belief that his adversary had committed a legal wrong, the actor cannot be liable for vexatious suit even if he acts with express malice.
Against this background, it is apparent that the liability of each person who initiates, participates in or otherwise promotes the prosecution of an unsuccessful lawsuit must be determined individually. Whether or not a person has acted with express malice in prosecuting the challenged lawsuit obviously depends upon his personal intent in so doing, in light of his personal animus, if any, towards his adversary. That one party acts with express malice towards his adversary does not in any way suggest, imply or support the inference that any other party assisting in the prosecution of their common lawsuit acts with a comparable mental state.
Similarly, if malice is only to be implied from lack of probable cause, that determination must also be individualized as to each participant in the prosecution, for it obviously depends on the particular state of his own knowledge and beliefs at the time of his actions. This, in turn, is a function not only of what the individual actor claims to have known or believed at the time of his challenged actions, but how he claims to have acquired that information. The reasonableness of a person's belief in the probable existence of particular facts — here, the essential elements of a valid cause of action — depends upon the totality of the CT Page 4306 circumstances in which his basis for that belief is developed.See Illinois v. Gates, 462 U.S. 213 (1983) (distinguishing determinations of probable cause based upon a person's own information received from other known and unknown sources of greater or lesser proven reliability); State v. Barton,219 Conn. 529 (1991). In sum, it must fairly be concluded that any individual's liability for vexatious suit must necessarily depend on highly individualized determinations of personal knowledge and intent. Because no one party's liability can fairly be predicated on that or any other person, a party sued for vexatious suit cannot properly claim that others who participated with him in the prosecution of the underlying lawsuit and "necessary parties" to the vexatious suit litigation.
Here, of course, Summit contents that its cause for suing these plaintiffs was necessarily the same as that of the Town of West Hartford, for in acting as it did it received all of its relevant information directly from the Town. However, that statement alone clearly undermines its claim, for the simple and obvious reason that the source or sources of West Hartford's information was necessarily different than Summit's. Specifically, whereas West Hartford obtained its information from some other, as — yet — undisclosed source or sources of greater or lesser proven reliability, Summit got its information from the Town itself. The issue presented in the instant action is thus whether or not a personably prudent person in Summit's situation would have had probable cause to name Spear and Spear Printing as defendants in the underlying federal lawsuit in view of what the Town had told Summit before it intervened in that lawsuit. If the Town itself were made a defendant herein, the quite different issue to be decided would be whether or not the Town itself had sufficient cause to act in view of the nature and sources of the relevant information it then possessed, including but not limited to that which it may have told Summit. In sum, the Court concludes that the Town of West Hartford is not a necessary party to this action because justice can be done between the Spear plaintiffs and Summit without raising or deciding the separate issues which would be involved had the Town been sued as well.[5]
 III
As for Summit's second claim — that even if the Town of CT Page 4307 West Hartford is not a necessary party to this action, it should nonetheless by made a party because it maybe liable to the plaintiffs for all or part of their damages, and thus to Summit itself by contribution — the Court is not persuaded that that furnishes any reason to make the Town a party to this lawsuit under General Statutes § 52-103. If the defendant believes that the Town may be liable to it for all or part of the plaintiff's claim against it, then it may move this Court under General Statutes § 52-102a for permission as a third-party plaintiff to serve the Town with an appropriate writ, summons and complaint stating its third-party claim. These plaintiffs, however, will not be required to name the Town as a party defendant in its principal action for vexatious suit, for to do so would condition its right to prove an action it wishes to pursue on its assertion of an action it does not need to pursue, when to do so will unnecessarily confuse the record at trial and expose the plaintiffs to a claim of vexatious suit by the Town.
In conclusion, the fair and efficient resolution of the pending controversy will in no way be promoted by ordering that the plaintiff name the Town as an additional defendant.
Accordingly, the defendant's motion to cite in is denied.
Michael R. Sheldon, J.