[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM
In the present action, the plaintiff, PRI Capital, LLC, seeks damages and an injunction because of the defendants' alleged interference with the plaintiffs contractual relations with the Eastern Pequot Tribe ("Pequots"). The defendants, Eastern Capital Funding, LLC and David Rosow, move to strike counts one, two, three, four, five and six of the plaintiffs revised complaint on the following grounds: (1) that the plaintiff is not a proper party to this lawsuit, (2) the plaintiff failed to join the Eastern Pequot Tribe ("Pequots"), (3) that the plaintiff has failed to state the claim of tortious interference and (4) that the plaintiff has failed to state a claim under the Connecticut Unfair Trade Practices Act ("CUTPA," General Statutes § 42-110a et seq.). In support of their motion, the defendants have filed a memorandum of law. The plaintiff filed an objection to the defendant's motion to strike.
 Facts
The plaintiff alleges the following facts. The Pequots, who are not a party to this action, are recognized by the Bureau of Indian Affairs of the United States and own 240 acres of real property in North Stonington, Connecticut. On December 10, 1996, the Pequots and the plaintiff formed Pequot Resorts, Inc. (Pequot Resorts), a Delaware Corporation in which the plaintiff holds forty-nine percent of the stock and the Pequots hold fifty-one percent of the stock. Pequot Resorts' purpose was to develop and manage a resort which was to be built on a section of the Pequots' land. On the same date, the plaintiff entered into a development agreement with the Pequots that gave the plaintiff the exclusive right to finance, develop, manage, construct, improve, operate, and maintain a resort destination, gaming casino, and non-gaming ventures:"[1] (Plaintiff's Second Revised Complaint, July 9, 2002, p. 4.) The signatory on behalf of the plaintiff was the plaintiffs then and current president, W. Ortho Smith, Jr. In or about November 1999, the CT Page 1901-a defendants began to negotiate with the Pequots to finance, develop and manage a tribal casino and hotel complex to be located on tribal land near Ledyard, Connecticut. Pursuant to the development agreement, the plaintiff was to issue ten percent of their stock in Pequot Resorts, Inc., but did not do so because of the defendants' negotiations with the Pequots.
The defendants in this action are Andrew Gosman, Michael Gosman, Abraham Gosman, Chance Ventures, Inc. ("Chance Ventures"), David Rosow and Eastern Capital Funding, LLC ("Eastern Capital"). Andrew Gosman, Michael Gosman and Abraham Gosman[2] are corporate officers in Chance Ventures. David Rosow is the chairman of Rosow Co., which is the managing agent of Eastern Capital.
Subsequent to the signing of the development agreement between the plaintiff and the Pequots, the plaintiff alleges that the defendants tortiously interfered with the agreement. Beginning in 1996, Andrew Gosman, Michael Gosman, Abraham Gosman and Chance Ventures began negotiating with the Pequots to entice the Pequots to break their agreement with the plaintiff by providing financial inducements to Pequot members even though they knew or should have known that the Pequots had entered into an exclusive agreement with the plaintiff. On April 11, 1997 and again on September 28, 1999, the Pequots and Chance Ventures entered into a development and financing agreement. In or about November 1999, David Rosow and Eastern Capital began to negotiate with the Pequots to finance, develop and manage a tribal casino and hotel complex though they knew or should have known that the Pequots had entered into an agreement with the plaintiff.
The plaintiff filed the operative complaint on July 9, 2002 consisting of eighteen counts. Counts one, four, seven, ten, thirteen and sixteen allege tortious interference and seek damages against Eastern Capital, David Rosow, Chance Ventures, Andrew Gosman, Michael Gosman and Abraham Gosman, respectively. Counts two, five, eight, eleven, fourteen and seventeen allege violations of CUTPA against the same defendants, respectively. Counts three, six, nine, twelve, fifteen and eighteen allege tortious interference claims and seek an injunction against the defendants, respectively. The defendants David Rosow and Eastern Capital ("defendants") filed their motion to strike counts one through six on August 28, 2002. The other four defendants, Chance Ventures, Andrew Gosman, Michael Gosman and Abraham Gosman, are not parties to this motion. CT Page 1901-b
 The Motion to Strike
"The purpose of a motion to strike is to challenge the legal sufficiency of the allegations of a complaint for failure to state a claim on which relief can be granted. Practice Book § 10-39." Bennettv. Connecticut Hospice, Inc., 56 Conn. App. 134, 136, 741 A.2d 349
(1999), cert. denied, 252 Conn. 938, 747 A.2d 3 (2000). "[T]he exclusive method to raise the issue of nonjoinder of an indispensable party is by way of a motion to strike . . ." Hilton v. New Haven, 233 Conn. 701,723, 661 A.2d 973 (1995). "When the complaint alleges all facts necessary to show that a party not joined is necessary to the action, [a motion to strike is] used to raise a defect apparent on the face of the pleadings." (Internal quotation marks omitted.) Caswell Cove Condominium Assn., Inc.v. Milford Partners, Inc., 58 Conn. App. 217, 224, 753 A.2d 361 (2000), cert. denied, 254 Conn. 922, 759 A.2d 1024 (2000). "If a motion to strike is directed to the entire complaint, the motion must fail if any of the plaintiffs claims is legally sufficient." Kovacs v. Kasper,41 Conn. Sup. 225, 226, 565 A.2d 18 (1989). "It is fundamental that in determining the sufficiency of a [pleading] challenged by a [party's] motion to strike, all well-pleaded facts and those facts necessarily implied from the allegations are taken as admitted." (Gazo v. Stamford,255 Conn. 245, 260, 765 A.2d 505 (2001).
 Standing/Party in Interest
The plaintiff alleges the following claims against Eastern Capital Funding, LLC and David Rosow: interference with contractual, economic and business relations in counts one and four; and, violations of CUTPA in counts two and five. The plaintiff also seeks injunctive relief against Eastern Capital Funding, LLC and David Rosow in counts three and six. The plaintiff alleges the same claims and seeks the same relief against Chance Ventures, Andrew Gosman, Michael Gosman and Abraham Gosman, none of which are participating in the motion to strike. (Plaintiff's Second Revised Complaint, July 9, 2002, counts one and four.)
In the memorandum of law in support of their motion to strike, the defendants argue that the plaintiff is not a proper party to the lawsuit because it is not a party to the agreement between Pequot Resorts, Inc. and the Pequots, and, therefore, the plaintiff lacks standing. The plaintiff counters it has a significant interest because it organized Pequot Resorts, Inc., for the purpose of developing a gaming facility and non-gaming facility on property owned by the Pequots. CT Page 1901-c
Whether or not a party is the proper party to bring an action, is a question of standing, and, therefore, implicates the court's jurisdiction. The proper procedural vehicle for attacking the court's jurisdiction is a motion to dismiss, and is inappropriate for a motion to strike. "Standing implicates a court's subject matter jurisdiction, which may be raised at any point in the judicial proceedings. Stamford Hospitalv. Vega, 235 Conn. 646, 656, 674 A.2d 821 (1996). A motion to strike, however, is not the proper vehicle for challenging the court's jurisdiction; the proper motion being a motion to dismiss. Practice Book § 10-30. Since jurisdiction involves the power in a court to hear and determine the cause of action presented to it, whenever the absence of jurisdiction is brought to the notice of the court, cognizance of the claim must be taken and decided before it can move one further step in the cause; as any movement is necessarily the exercise of jurisdiction.Westbrook v. Savin Rock Condominiums Assn., Inc., 50 Conn. App. 236,242, 717 A.2d 789 (1998)." Animal Rights Front v. Plan and Zoning, Superior Court, judicial district of Hartford at Hanford, Docket No. CV 01 0806758 S (November 30, 2001, J.T.R. Wagner) (30 Conn.L.Rptr. 751).
A plaintiff has standing to bring a suit when he has a real interest in the subject matter in controversy. "Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy. (Internal quotation marks omitted.) Weinenbacher v. Duclos,234 Conn. 51, 62, 661 A.2d 988 (1995). The defendants argue that the plaintiff does not have an interest sufficient to confer standing. The plaintiffs forty-nine percent ownership interest in Pequot Resorts is significant enough to grant standing. It is irrelevant that the Pequots own fifty-one percent. The plaintiffs forty-nine percent ownership interest in Pequot Resorts is a "real interest" in the subject matter in controversy in this case.
A part owner of a corporation is likely to be injured if the corporation is deprived of the benefits for which it contracted. "Standing is . . . a practical concept designed to ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented . . . These two objectives are ordinarily held to have been met when a complainant makes a colorable claim of direct injury [that the complainant] has suffered or is likely to suffer, in an CT Page 1901-d individual or representative capacity. Such a personal stake in the outcome of the controversy . . . provides the requisite assurance of a concrete adverseness and diligent advocacy . . . If a party is found to lack standing, the court is without subject matter jurisdiction to determine the cause." (Citations omitted; internal quotation marks omitted.) Roth v. Weston, 259 Conn. 202, 219, 782 A.2d 431 (2002). The plaintiff formed Pequot Resorts with the Pequots, and subsequently contracted with the Pequots through Pequot Resorts to receive a financial benefit. It is this financial benefit that the plaintiff alleges the defendants deprived him of. If Pequot Resorts is injured, then so is the plaintiff injured. The plaintiff, as part owner of Pequot Resorts, is injured if Pequot Resorts, of which it owns forty-nine percent, is denied the benefits for which it contracted. The plaintiff has a sufficient interest to have the standing necessary to bring this action, and, therefore, the court has the subject matter jurisdiction necessary to hear it. The defendants' motion to strike is denied as to these grounds.
 Tortious Interference
The plaintiff alleges that the defendants negotiated and entered into an agreement with the Pequots after inducing them to break their agreement with the plaintiff despite knowing of the agreement between the plaintiff and the Pequots. The defendants' conduct was wrong, improper, and without legal justification.
In their motion to strike, the defendants first argue that because the plaintiff seeks to have the Pequots' contractual rights adjudicated, the Pequots are a necessary and indispensable party, and that because the plaintiff has failed to join the Pequots, the court must strike the entire complaint as it pertains to them (counts one, two, three, four, five and six). (Defendant's Memorandum of Law, August 28, 2002, p. 1.) The defendants argue that the courts consider three factors in determining whether joinder of a party is necessary: (1) whether the absent party has an interest related to the controversy which as a practical matter would be impaired, (2) whether complete relief would be available to the parties already in the suit, and (3) whether a party already in the suit would be subjected to a substantial risk of multiple or inconsistent obligations. (Defendant's Memorandum of Law, September 22, 2002, pp. 4-5.) Plaintiff counters by arguing that the Pequots are not a necessary and indispensable party because there is no breach of contract claim and the claims otherwise do not require the Pequots be a party to this case.
When a movant seeks to have the entire complaint struck, if any of the nonmoving party's claims are legally sufficient, the motion to strike CT Page 1901-e must be denied in its entirety. 1 Stephenson Conn. Civ. Proc. (2d. Ed. 1982 Sup.) 116e, pp. 473-74. In the present case, because the defendants move to strike the complaint in its entirety based on the failure to join a necessary and indispensable party, if the court finds any one of the claims legally sufficient then the motion to strike must be denied throughout wherever the defendants advance the same argument. Thus, if the court finds that the Pequots are not a necessary and indispensable party to any of the plaintiffs claims, the court will deny the motion to strike as to those grounds in its entirety even though that same argument might be meritorious against other claims.
"In Sturman v. Socha, 191 Conn. 1, 6-7, 463 A.2d 527 (1983), we defined "necessary parties' as [p]ersons having an interest in the controversy, and who ought to be made parties, in order that the court may act on that rule which requires it to decide on, and finally determine the entire controversy, and do complete justice, by adjusting all the rights involved in it . . . [B]ut if their interests are separable from those of the parties before the court, so that the court can proceed to a decree, and do complete and final justice, without affecting other persons not before the court, the latter are not indispensable parties . . . In short, a party is necessary' if its presence is absolutely required in order to assure a fair and equitable trial." (Citations omitted; internal quotation marks omitted.) Biro v. Hill, 214 Conn. 1, 5-6, 570 A.2d 182
(1990).
In Hi-Ho Tower, Inc. v. Com-Tronics, Inc., 255 Conn. 20, 761 A.2d 1268
(2000), our Supreme Court stated the requirements of a tortious interference claim. "[I]n order to recover for a claim of tortious interference with business expectancies, the claimant must plead and prove that: (1) a business relationship existed between the plaintiff and another party; (2) the defendant intentionally interfered with the business relationship while knowing of the relationship; and (3) as a result of the interference, the plaintiff suffered actual loss." Hi-HoTower, Inc. v. Com-Tronics, Inc., supra, 255 Conn. 32-33. The interference must have some improper motive or improper means such as fraud, misrepresentation, intimidation, molestation or other malicious acts by the defendant. Biro v. Hirsch, supra, 62 Conn. App. 21. Also, the contract underlying the claim need not be enforceable. Id.
The defendants' application of breach of contract law is erroneous. The plaintiff alleges tortious interference and not a breach of contract. Thus, case law, grounded in breach of contract law, is not analogous to the present case. CT Page 1901-f
A party whose conduct is not at issue in a tortious interference claim is not necessary and indispensable, and, therefore, since the Pequots have not been alleged to have engaged in tortious interference, they are not a necessary and indispensable party. "When joinder is permitted . . . each tortfeaser may be sued severally, and held responsible for the damage caused, although other wrongdoers have contributed to it. The defendants cannot compel the plaintiff to make the others parties to the action or complain because they have not been joined." (Internal quotation marks omitted.) Biro v. Hill, supra, 214 Conn. 7. In Biro, the court held that though the party not joined had engaged in the same conduct with the other defendants, the plaintiff was not required to join that party in its tortious interference claim because their presence was "not necessary for the court to proceed to a decree, and do complete and final justice." (Internal quotation marks omitted.) Id. In the present case, the Pequot tribe did not engage in the same conduct with the defendants. The Pequots do not fit the criteria set by the court in Biro
for joinder to be required. Therefore, the Pequots are not a necessary and indispensable party as their conduct is not at issue in plaintiffs tortious interference claim.
The defendants' motion to strike counts one through six on the grounds that Pequots are an indispensable party, is denied as the Pequots are not a necessary and indispensable party. Since the defendant's motion to strike seeks to strike the complaint in its entirety for failure to join an indispensable party, the argument must fail as to all counts because when a motion to strike is directed to the entire complaint, the motion must fail if any of the plaintiffs claims are legally sufficient. Thus, the court need not determine, and it does not decide, whether the Pequots are an indispensable party to the plaintiffs CUTPA claims (counts two and four) or injunction (counts three and six). The defendants' "failure to join an indispensable party" argument in their motion to strike counts one through six is denied on these grounds.
 Failure to State a Claim
The defendants next argue that the plaintiff fails to state a claim for tortious interference because (1) the plaintiff fails to allege that the Pequots selected the defendants through improper means; (2) the plaintiff fails to allege that the defendants knew of the agreement between Pequot Resorts and the plaintiff; and (3) no business relationship existed between the plaintiff and the Pequots because it had been destroyed by Chance Ventures, Inc. Plaintiff counters that its complaint alleges all the required elements. CT Page 1901-g
The plaintiff's complaint sufficiently alleges tortious interference and the motion to strike is denied on these grounds. "[I]n order to recover for a claim of tortious interference with business expectancies, the claimant must plead and prove that: (1) a business relationship existed between the plaintiff and another party; (2) the defendant intentionally interfered with the business relationship while knowing of the relationship; and (3) as a result of the interference, the plaintiff suffered actual loss." Hi-Ho Tower, Inc. v. Com-Tronics, Inc., supra,255 Conn. 32-33. The interference must have some improper motive or improper means such as fraud, misrepresentation, intimidation, molestation or other malicious acts by the defendant. Biro v. Hirsch,supra, 62 Conn. App. 21. The plaintiff alleges the defendants improperly interfered with the business relationship that they knew about. "[T]he [defendants] knowingly induced the [Pequots] to breach its contract with Plaintiff . . ." (Plaintiff's Second Revised Complaint, July 9, 2002, counts one and four.) The plaintiff has pled that a business relationship existed between the plaintiff and the Pequots. The complaint does not allege that the relationship was destroyed by the agreement between Chance Ventures, Inc. and the Pequots. The defendants' argument goes to the merits of the plaintiff's claim and therefor is not a proper argument for a motion to strike. The defendants' motion to strike on these grounds is denied because the plaintiff alleges the existence of a business relationship and that the defendants knew of the relationship and improperly interfered with it.
 CUTPA
In counts two and five of their revised complaint, the plaintiff sets forth violations of CUTPA by the defendants. The plaintiff alleges that the defendants' inducements, negotiations, and entering into an agreement with the Pequots, were unfair, deceptive, and/or unscrupulous practices.
In its memorandum of law filed in support of their motion to strike, the defendants argue that the CUTPA claims allege conclusions of law. Plaintiff counters that it has alleged sufficient facts to support its CUTPA claims.
"[I]n determining whether a practice violates CUTPA we have adopted the criteria set out in the cigarette rule by the federal trade commission for determining when a practice is unfair: (1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise — in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; CT Page 1901-h (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers, [competitors or other business persons] . . . All three criteria do not need to be satisfied to support a finding of [a violation of CUTPA]." (Internal quotation marks omitted.) Macomber v. Travelers Property Casualty Corp.,261 Conn. 620, 644, 803 A.2d 311 (2002). There is no special CUTPA pleading requirement to plead with particularity greater than that of any other claim. Id. In Macomber, the plaintiff pled that "[d]efendants used and employed unfair and deceptive acts and practices in connection with the solicitation and entering into of structured settlements in connection with the sale of annuities . . ." (Internal quotation marks omitted.) Id., 643-44. Our Supreme Court held this language to be sufficient to withstand a motion to strike. In the present case, the language used is substantially similar. "By its above-described course of conduct, i.e., negotiating with and entering into an agreement with the Tribe, the Defendant has engaged in unfair, deceptive, and/or unscrupulous practices in violation of [CUTPA]." (Plaintiff's Second Revised Complaint, July 9, 2002, Counts two and five.) The plaintiff further alleges that the defendants "unlawfully continued to negotiate with the [Pequots]. (Plaintiff's Second Revised Complaint, July 9, 2002, ¶ 27.) Thus, the plaintiff sufficiently pleads CUTPA and the defendants' motion to strike is denied.
 Injunction
In counts three and six of its complaint, the plaintiff seeks an injunction against the defendants. The plaintiff alleges that the defendants' agreement with the Pequots causes it irreparable harm and will continue to do so unless enjoined.
The defendants attack the plaintiffs claim for injunctive relief; arguing that the claim alleges only conclusions of law, and not facts. The defendants' arguments in their memo go to the merits of whether an injunction should be granted and thus are inappropriate for a motion to strike.[3]
"It is well established that [a] party seeking injunctive relief has the burden of alleging . . . irreparable harm and lack of an adequate remedy at law." (Internal quotation marks omitted.) Lawrence Brunoli,Inc. v. Branford, 247 Conn. 407, 416, 722 A.2d 271 (1999). If there is an adequate remedy at law, the motion to strike should be granted. Totinov. Zoning Board of Appeals, 41 Conn. Sup. 398, 401, 578 A.2d 681 (1990). However, "[w]hen a statute and state regulations have been violated, a plaintiff seeking an injunction is relieved of the burden of alleging and CT Page 1901-i proving irreparable harm and no adequate remedy at law under the rationale that the enactment of the statute by implication assumes that no adequate alternative remedy exists and that the injury was irreparable, that is, the legislation was needed or else it would not have been enacted." (Internal quotation marks omitted.) Burns v. Barrett, 41 Conn. Sup. 66,78, 550 A.2d 23 (1998). See also Conservation Commission v. Price,193 Conn. 414, 429, 479 A.2d 187 (1984).
The plaintiff alleges in counts three and six that it will suffer irreparable harm and that there is no adequate remedy at law. The plaintiff incorporates by reference the facts it alleges in paragraphs one through twenty-nine in counts three and six. These facts, if proven at trial, may establish the requisite factual foundation necessary for the issuance of an injunction. Furthermore, the plaintiff has alleged violations of CUTPA, which if proven true might also provide the basis for the issuance of an injunction. Therefore, counts three and six are legally sufficient and the motion to strike is denied as to these grounds.
 Piercing the Corporate Veil
Counts four, five and six are alleged against David Rosow. The defendants argue that the plaintiff has not pled sufficient facts to pierce the corporate veil and thereby hold David Rosow personally liable. The plaintiff counters that they have alleged sufficient facts and that if the court were to find a deficiency in the pleading, the defendant David Rosow is still personally liable because a corporate officer is liable for any torts he committed.
"It is black letter law that an officer of a corporation who commits a tort is personally liable to the victim regardless of whether the corporation itself is liable. Donsco, Inc. v. Casper Corporation,587 F.2d 602, 606 (3d Cir. 1978); Scribner v. O'Brien, Inc., 169 Conn. 389,404, 363 A.2d 160 (1975); First National Bank Trust Co. v.Manning, 116 Conn. 335, 340, 164 A. 881 (1933); Semple v. Morganstern,97 Conn. 402, 404, 116 A. 906 (1922); H. Henn J. Alexander, Laws of Corporations (3d Ed. 1983) 230; 19 Am.Jur.2d, Corporations 1882." Kilduffv. Admans, Inc., 219 Conn. 314, 331-32, 593 A.2d 478 (1991). Thus, the plaintiffs complaint has pled sufficiently to allow for the defendant David Rosow to be found personally liable. CT Page 1901-j
 Conclusion
The defendants' motion to strike is denied in its entirety for the foregoing reasons.