## GIZELLA BIRO *v.* LEON C. HIRSCH ET AL.
### (AC 19639)

Lavery, C. J., and Spear and Hennessy, Js.

Argued September 26, 2000—officially released February 27, 2001

*Suzanne L. McAlpine*, with whom, on the brief, was *Hugh F. Keefe*, for the appellants (defendants-third party plaintiffs).

*Bryan L. LeClerc*, with whom, on the brief, was *Thomas G. Cotter*, for the appellee (third party defendant).

*Opinion*

SPEAR, J. The defendants in this action, Leon C. Hirsch and Turi Josefson,[1] husband and wife, appeal from the judgment of the trial court granting the motion

---

[1] The complaint filed by the plaintiff, Gizella Biro, also named as a defendant United States Surgical Corporation, which is not a party to this appeal. All subsequent references to "the defendants" are to Hirsch and Josefson, unless otherwise noted, despite their status as plaintiffs with respect to their revised third party complaint against the third party defendant, Cornelia Ford.

of the third party defendant, Cornelia Ford, to strike the defendants' revised third party complaint against her.[2] The third party complaint alleged conspiracy to commit extortion (count one), intentional infliction of emotional distress (count two) and tortious interference with a business expectancy (count three). The defendants claim that the court improperly (1) granted the motion to strike and (2) ruled on the motion, as the motion had been argued and was pending before another trial court judge. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to this appeal. The defendants employed the plaintiff, Gizella Biro, as a housekeeper and cook for more than five years. In her amended complaint,[3] the plaintiff claims that Hirsch abused their employment relation-

---

[2] Ford directed her motion to strike, dated May 3, 1996, and her reply brief on the motion dated July 1, 1996, to the defendants' allegations against her in their counterclaim against the plaintiff, Gizella Biro. In both of her pleadings, Ford also referred to the allegations in counts one, two and three, the numbered counts in the revised third party complaint. Those counts allege conspiracy to commit extortion, intentional infliction of emotional distress and tortious interference with a business expectancy, respectively. The corresponding counts in the counterclaim are numbered two, five and twelve, respectively. The defendants' brief opposing Ford's motion to strike, the court's memorandum of decision on the motion to strike, the judgment on the motion and the defendants' appeal papers all referred to Ford's motion as a motion to strike the defendants' three count, revised third party complaint. We, accordingly, treat Ford's motion as a motion to strike the allegations against her in the revised third party complaint rather than in the counterclaim. See *CMG Realty of Connecticut, Inc.* v. *Colonnade One Ltd. Partnership*, 36 Conn. App. 653, 656 n.5, 653 A.2d 207 (1995) (we may treat case as parties treated and presented it, despite procedural irregularities).

[3] The plaintiff's six count amended complaint, dated August 4, 1994, alleged sexual assault against Hirsch; battery against Hirsch; battery against Josefson; eavesdropping against Hirsch and the defendant United States Surgical Corporation; unlawful withholding of wages against Hirsch, Josefson and United States Surgical Corporation; and intentional infliction of emotional distress against Hirsch, Josefson and United States Surgical Corporation. The court rendered a summary judgment in favor of Hirsch and United States Surgical Corporation on the eavesdropping count.

ship by forcing her to have sexual relations with him over a period of several years and that Josefson attempted to engage her in similar conduct. At the time that the plaintiff filed the complaint, Hirsch served as president and chief executive officer of the defendant United States Surgical Corporation.

The defendants subsequently filed a twelve count counterclaim, alleging, inter alia, violations of the federal Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq. (RICO), conspiracy to commit extortion, defamation, false light invasion of privacy, intentional infliction of emotional distress, vexatious litigation, larceny and tortious interference with a business expectancy. The defendants cited in Ford as a party defendant with respect to the claims of conspiracy to commit extortion, intentional infliction of emotional distress and tortious interference with a business expectancy.

At about the same time, the defendants filed a third party complaint[4] against Ford, alleging conspiracy to commit extortion, intentional infliction of emotional distress and tortious interference with a business expectancy. The claims against Ford in the counterclaim and the third party complaint were similar, but not identical.[5] Ford filed a motion to strike all three counts of the third party complaint.[6] Four months later,

---

[4] The revised third party complaint, filed in April, 1996, is the operative complaint for purposes of this appeal.

[5] The claims against Ford for conspiracy to commit extortion and intentional infliction of emotional distress were essentially the same in the counterclaim and in the third party complaint. The claim against Ford in the counterclaim for tortious interference with a business expectancy, however, included allegations of extortion that were not made in the third party complaint. Despite the fact that claims similar to those in the third party complaint remain pending against Ford in the counterclaim, the judgment of the trial court with respect to the third party complaint is a final judgment for purposes of appeal under Practice Book § 61-2 because the entire third party complaint was stricken.

[6] See footnote 2.

the plaintiff filed a motion to strike nine counts of the counterclaim, including count two, alleging conspiracy to commit extortion, and count five, alleging intentional infliction of emotional distress, to which Ford had been made a party defendant. The court, *Skolnick, J.*, denied the plaintiff's motion on the ground that the allegations were legally sufficient to support the defendants' claims. More than one year later, the court, *Tierney, J.*, granted Ford's motion to strike the third party complaint on the ground that the allegations were legally insufficient to support the defendants' claims. The defendants did not replead, and the court rendered judgment for Ford. This appeal followed.

I

The defendants first claim that the court improperly granted Ford's motion to strike because they sufficiently pleaded the elements of conspiracy to commit extortion, intentional infliction of emotional distress and tortious interference with a business expectancy in the third party complaint against Ford. We disagree.

The following additional facts are necessary to our resolution of that issue. The claims against Ford in the third party complaint were based in part on allegations that (1) Ford had entered into a conspiracy to commit extortion with the plaintiff and Eva Kale, another housekeeper employed by the defendants, (2) the purpose and object of the conspiracy were to compel the defendants, through threats of uttering and publishing false, malicious and scandalous statements about them, to pay to the plaintiff and to Kale large sums of money in return for refraining from such malicious and unlawful conduct, (3) in furtherance of the conspiracy, Ford had advised the plaintiff to commence legal action against the defendants and had assisted the plaintiff in retaining an attorney, and (4) the defendants suffered damages and injuries as a result of the conspiracy. The third

party complaint also contained allegations that the plaintiff and Kale had "uttered and published, or caused to be uttered and published," false and defamatory statements concerning the defendants.

"The standard of review of a trial court's granting of a motion to strike is well established. Because a motion to strike challenges the legal sufficiency of a pleading and, consequently, requires no factual findings by the trial court, our review of the court's ruling on [a motion to strike] is plenary. . . . In an appeal from the granting of a motion to strike, we must read the allegations of the complaint generously to sustain its viability, if possible . . . . We must, therefore, take the facts to be those alleged in the complaint that has been stricken and . . . construe the complaint in the manner most favorable to sustaining its legal sufficiency." (Internal quotation marks omitted.) *Eskin* v. *Castiglia*, 253 Conn. 516, 522–23, 753 A.2d 927 (2000).

A

The elements of a civil action for conspiracy are: "(1) a combination between two or more persons, (2) to do a criminal or an unlawful act or a lawful act by criminal or unlawful means, (3) an act done by one or more of the conspirators pursuant to the scheme and in furtherance of the object, (4) which act results in damage to the plaintiff." (Internal quotation marks omitted.) *Marshak* v. *Marshak*, 226 Conn. 652, 665, 628 A.2d 964 (1993), overruled on other grounds, *State* v. *Vakilzaden*, 251 Conn. 656, 666, 742 A.2d 767 (1999).

Although we affirm the court's decision to strike the conspiracy claim in count one, we do not fully agree with its reasoning.[7] In its memorandum of decision, the court concluded that the motion to strike should be

___

[7] We may affirm a proper result of the trial court for a different reason. See *CMG Realty of Connecticut, Inc.* v. *Colonnade One Ltd. Partnership*, 36 Conn. App. 653, 660, 653 A.2d 207 (1995).

granted because "the defendants have alleged Ford's sole participation was the recommendation of an attorney for Biro. That act, in and of itself, is not 'a criminal or an unlawful act or a lawful act by criminal or unlawful means.' Ford is only included in the tail end of a general conspiracy allegation. The defendants have not alleged any act by Ford as part of the conspiracy."

We take the analysis one step further because, had the third party complaint alleged that either of the other two conspirators committed an act specifically in "furtherance of" the extortion attempt pursuant to General Statutes § 53a-119, the claim would be legally sufficient on the ground that "all conspirators are civilly liable for the damage resulting from any overt act committed by one of them pursuant to the combination." *Governors Grove Condominium Assn., Inc.* v. *Hill Development Corp.*, 36 Conn. Sup. 144, 152, 414 A.2d 1177 (1980); see also *Marshak* v. *Marshak*, supra, 226 Conn. 665. We therefore conclude that the defendants' claim must fail because they do not allege a single act by *any* of the conspirators "in furtherance of" the conspiracy.[8]

Section 53a-119 (5) provides in relevant part: "A person obtains property by extortion when he compels or induces another person to deliver such property to himself or a third person by means of instilling in him a fear that, if the property is not so delivered, the actor or another will . . . (E) expose a secret or publicize an asserted fact, whether true or false, tending to subject some person to hatred, contempt or ridicule . . . ."

---

[8] The defendants properly alleged the other three elements of the conspiracy claim. Paragraph seven of count one alleges that Ford entered into a combination or conspiracy with the plaintiff and Kale. Paragraph eight alleges that the purpose and objective of the conspiracy was to compel the defendants, through threats of uttering and publishing false, malicious and scandalous statements about them, to pay to Kale and to the plaintiff large sums of money in return for refraining from such malicious and unlawful conduct. Paragraphs thirty-four and thirty-five allege that the defendants suffered damages and injuries as a result of the alleged conspiracy.

Even when reading the third party complaint generously to sustain its validity, none of the allegations in paragraphs nine, ten, eleven, twenty-eight, thirty and thirty-two of count one, each of which purportedly describes acts by one of the conspirators "in furtherance of" the conspiracy, properly supports the claim of extortion. Indeed, we find what is *not* alleged to be far more significant than what *is* alleged. For example, paragraph nine alleges that Ford advised the plaintiff to commence legal action against the defendants and assisted the plaintiff in retaining an attorney, but does not allege that the plaintiff retained the attorney for the purpose of threatening to publicize scandalous statements about the defendants or to commence litigation against them if they failed to comply with the plaintiff's demand for money. Similarly, paragraphs ten, eleven, twenty-eight, thirty and thirty-two allege that the plaintiff or Kale "uttered and published or caused to be uttered and published," false and defamatory statements concerning the defendants, and that the plaintiff's attorney held a widely publicized press conference. The essence of extortion, however, is not publication, but rather the *threat* of publication if the extortionary demands are not met. Conversely, allegations regarding publication typically support other causes of action, as the defendants themselves recognized in their counterclaim, in which they make virtually identical allegations as to publication in count three, defamation, and count four, false light invasion of privacy.

The absence of specific allegations that the conspirators threatened to bring a lawsuit against the defendants and to publicize their claims if they were not paid the money demanded becomes all the more striking in light of the fact that the defendants properly allege extortionary acts by the plaintiff and Kale in count one, para-

graphs eighteen and nineteen, of their counterclaim.[9] Hence, the defendants were aware of the requirements for alleging the factual predicate for extortion. Accordingly, we conclude that when the third party complaint is construed in a manner most favorable to sustaining its legal sufficiency, the defendants have failed to allege a legally sufficient cause of action for conspiracy to commit extortion in the third party complaint against Ford.

## B

Having concluded that the conspiracy claim must fail, we now consider whether the claims against Ford for intentional infliction of emotional distress and tortious interference with a business expectancy must also fail, either standing alone or insofar as they are based on the conspiracy allegations.

The defendants' claims against Ford for intentional infliction of emotional distress and tortious interference with a business expectancy incorporate all but the last two paragraphs of the conspiracy claim.[10] To the extent that the second and third claims are derived from the

---

[9] Count one, paragraph eighteen, of the counterclaim, alleging RICO violations, states that "[i]n order to perpetrate the conspiracy set forth above, the enterprise used or caused the use of the United States mail for correspondence directed to Hirsch, threatening the commencement of litigation against Hirsch for sexual assault, intimidation, harassment, physical and emotional abuse, intentional infliction of emotional distress and rape." Count one, paragraph nineteen, of the counterclaim states that "[i]n order to perpetrate the conspiracy set forth above, the enterprise further transmitted or caused to be transmitted interstate communications by wire or telephone, which communications included, without limitation, telephone calls between the agents and attorneys retained by the enterprise and the attorneys retained by the plaintiffs to defend themselves against the enterprise's threatened litigation." Those paragraphs are not incorporated in count two of the counterclaim alleging conspiracy to commit extortion or count five of the counterclaim alleging emotional distress, but are incorporated in count twelve of the counterclaim alleging tortious interference with a business expectancy.

[10] The last two paragraphs of the conspiracy count allege harm and damages.

claim of conspiracy to commit extortion, they must necessarily fail because the conspiracy claim is legally insufficient. Accordingly, we must next consider whether the claims for intentional infliction of emotional distress and tortious interference with a business expectancy may survive without extortion as a basis.

The elements of a claim for intentional infliction of emotional distress are well settled. "For [a party] to prevail on a claim of intentional infliction of emotional distress, four elements must be established. It must be shown: (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the . . . conduct was the cause of the [party's] distress; and (4) that the emotional distress sustained by the [party] was severe. . . . *Petyan* v. *Ellis*, 200 Conn. 243, 253, 510 A.2d 1337 (1986). . . . *Appleton* v. *Board of Education*, 53 Conn. App. 252, 265, 730 A.2d 88 [(1999), rev'd in part on other grounds, 254 Conn. 205, 757 A.2d 1059 (2000)]. Liability for intentional infliction of emotional distress requires conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind. . . . *Ancona* v. *Manafort Bros., Inc.*, 56 Conn. App. 701, 712, 746 A.2d 184, cert. denied, 252 Conn. 953, 749 A.2d 1202 (2000). All four elements must be established to prevail on a claim for intentional infliction of emotional distress. *Reed* v. *Signode Corp.*, 652 F. Sup. 129, 137 (D. Conn. 1986); see also *Petyan* v. *Ellis*, supra, 254." (Internal quotation marks omitted.) *Muniz* v. *Kravis*, 59 Conn. App. 704, 708–709, 757 A.2d 1207 (2000).

Here, the defendants do not allege facts establishing that Ford's conduct was extreme and outrageous. Count two merely alleges that Ford advised the plaintiff to commence legal action against the defendants and

assisted the plaintiff in retaining an attorney. Such conduct cannot be said to transgress the bounds of socially tolerable behavior. See *Ancona* v. *Manafort Bros., Inc.*, supra, 56 Conn. App. 712. We conclude that, absent the extortion claim, count two is legally insufficient to allege a cause of action against Ford for intentional infliction of emotional distress.

## C

We next consider the defendants' claim of tortious interference with a business expectancy. "An action for tortious interference with a business expectancy is well established in Connecticut. The plaintiff need not prove that the defendant caused the breach of an actual contract; proof of interference with even an unenforceable promise is enough. . . . A cause of action for tortious interference with a business expectancy requires proof that the defendant was guilty of fraud, misrepresentation, intimidation or molestation . . . or that the defendant acted maliciously. . . . *Jones* v. *O'Connell*, 189 Conn. 648, 660, 458 A.2d 355 (1983). It is also true, however, that not every act that disturbs a contract or business expectancy is actionable. *Blake* v. *Levy*, 191 Conn. 257, 260, 464 A.2d 52 (1983). A defendant is guilty of tortious interference if he has engaged in improper conduct. Id., 261; see 4 Restatement (Second), Torts §§ 766, 766B, 767 (1979). [T]he plaintiff [is required] to plead and prove at least some improper motive or improper means. *Kakadelis* v. *DeFabritis*, 191 Conn. 276, 279, 464 A.2d 57 (1983); *Blake* v. *Levy*, supra, 262. . . .

"Stated simply, to substantiate a claim of tortious interference with a business expectancy, there must be evidence that the interference resulted from the defendant's commission of a tort." (Citations omitted; internal quotation marks omitted.) *Golembeski* v.

*Metichewan Grange No. 190*, 20 Conn. App. 699, 702–703, 569 A.2d 1157, cert. denied, 214 Conn. 809, 573 A.2d 320 (1990).

The defendants again have failed to allege a legally sufficient claim against Ford. The defendants make no allegations to support their claim that Ford's advice and assistance in retaining legal counsel for the plaintiff constituted a tort, was improper or interfered with an enforceable or unenforceable promise. See id. In fact, the defendants provide no authority whatsoever, and we are aware of none, to support the conclusion that recommending assistance of counsel, in and of itself, is anything but legal.

Accordingly, after construing the allegations generously to sustain their validity, we conclude that count three is legally insufficient to support a cause of action against Ford for tortious interference with a business expectancy.

II

The defendants finally claim that the Superior Court in the judicial district of Stamford-Norwalk improperly held a hearing and ruled on Ford's motion to strike because the motion had been argued and was pending before the Superior Court in the judicial district of Fairfield. We do not agree.

The following additional facts are relevant to a resolution of these claims. On May 7, 1998, the chief court administrator ordered that the case be transferred to the complex litigation docket in Waterbury pursuant to General Statutes (Rev. to 1997) § 51-347a. The order permitted any party objecting to such transfer to file an objection within twenty days. The defendants filed an untimely objection on June 11, 1998. On June 30, 1998, the court ordered that the case be transferred

from Waterbury to the complex litigation docket in Stamford. According to the docket summary, the defendants filed a second untimely objection to the transfer on September 18, 1998. The Superior Court in Stamford heard the motion to strike on February 19, 1999, and issued its memorandum of decision on April 1, 1999.

General Statutes (Rev. to 1997) § 51-347a (a) provides: "The judge holding the superior court in any judicial district may, if in his opinion the cause of justice requires it, upon motion, order any civil action pending in the court, which has been claimed to the jury, to be transferred to the court in another judicial district. The Chief Court Administrator may, on his own motion, when required for the efficient operation of the courts and to insure the prompt and proper administration of justice, order like transfers."

Practice Book §§ 23-13 and 23-14 also provide that the chief court administrator or the chief administrative judge of the civil division may grant a case complex litigation status, and that any judge to whom complex litigation cases have been assigned has broad powers to transfer the proceedings to another judicial district and enter any appropriate order that facilitates the management of such cases. Consequently, the court's decision to transfer the present case to the complex litigation docket in Stamford, and the Stamford Superior Court's hearing and subsequent ruling on the motion, fully complied with the relevant statutory provisions and rules of practice, and we conclude that the defendants' claim is without merit.

The judgment is affirmed.[11]

In this opinion the other judges concurred.

[11] We do not address what effect, if any, the judgment has on allegations against Ford in the defendants' counterclaim.