[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION TO DISMISS/STRIKE (#102)
 I
The plaintiffs, Susan and Brian McNamara, brought this action to recover for alleged discrimination and emotional distress. The complaint alleges that the defendants, Tournament Players Club of Connecticut (TPC) and PGA Tour Construction Services, Inc. (PGA), jointly own and operate a golf course at River Highlands. (Complaint, Count One, ¶ 3.)
Prior to July 1999, Brian McNamara was a member of the golf course at River Highlands. (Complaint, Count Nine, ¶ 7.) On July 17, 1999, Brian McNamara and another member became involved in a verbal dispute in CT Page 12656 which the other member accused Brian McNamara of cheating. The complaint also alleges that the other member made derogatory remarks about Brian McNamara's Irish heritage. (Complaint, Count ¶ 8.) After the incident, the defendants allegedly canceled Brian McNamara's membership.
On October 22, 1999, Susan McNamara applied for a membership at the River Highlands course. On October 28, the defendants allegedly informed her that she could not receive a membership because "she is a woman who is married to the plaintiff Brian McNamara." (Complaint, Count One, ¶ 8.)
On August 24, 2001, the plaintiffs filed a nine count complaint. On November 3, 2001, the defendants filed a motion titled "Defendants' Motion to Dismiss or, in the Alternative, to Strike Plaintiffs' Complaint."[1]
 II
The motion to dismiss states two grounds upon which portions of the complaint should be dismissed. First, the defendants contend that the fourth and fifth counts, alleging violations of General Statutes §§46a-58 (a)[2] and 46a-64,[3] respectively, should be dismissed because the court lacks subject matter jurisdiction to hear those claims. Second, the defendants argue that the whole complaint, as to PGA, should be dismissed because the court lacks personal jurisdiction over PGA.
A motion to dismiss "properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court."Gurliacci v. Mayer, 218 Conn. 531, 544, 590 A.2d 914 (1991). "In ruling upon whether a complaint survives a motion to dismiss, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader." (Internal quotation marks omitted.)Cumberland Farms, Inc. v. Groton, 247 Conn. 196, 214 n. 15, 719 A.2d 465
(1998).
 A
The defendants contend that the court lacks subject matter jurisdiction to entertain the fourth and fifth counts because the plaintiffs have failed to exhaust their administrative remedies. "Because the exhaustion [of administrative remedies] doctrine implicates subject matter jurisdiction, [the court] must decide as a threshold matter whether that doctrine requires dismissal of the [fourth and fifth counts.]" Lucas v.CT Page 12657Riordan, 62 Conn. App. 566, 569, 771 A.2d 270 (2001).
In support of their motion, the defendants have attached a copy of the Connecticut Commission on Human Rights and Opportunities (CHRO) disposition letter which states that the plaintiffs' complaint was administratively dismissed. The defendants represent, and the plaintiffs do not deny, that the plaintiffs failed to obtain a release to sue from CHRO, pursuant to General Statutes § 46a-100.
When deciding a motion to dismiss, the court must "take the facts to be those alleged in the complaint." Cumberland Farms, Inc. v. Groton, supra, 247 Conn. 214 n. 15. However, "[i]t is appropriate on a motion to dismiss to consider any record that accompanies the motion, including supporting affidavits that contain undisputed facts." (Internal quotation marks omitted.) Simsbury Fire District v. Department of Public UtilityControl, Superior Court, judicial district of New Britain, Docket No. 502052 (March 21, 2001, Cohn, J.), citing Russell v. Yale University,54 Conn. App. 573, 577, 737 A.2d 941 (1999). See also Shay v. Rossi,253 Conn. 134, 140, 749 A.2d 1147 (2000) (The Supreme Court used undisputed facts from affidavits to overturn a motion to dismiss.)
The Superior Court has split upon whether a plaintiff must always obtain a release, pursuant to § 46a-100. Because the plaintiffs had previously filed a claim with CHRO but have now chosen to pursue a private suit after CHRO dismissed their claims, this court is confronted with three lines of cases. The first line, which the defendant requests this court to adopt, finds that § 46a-100 is mandatory and, therefore, a plaintiff must always obtain a release to sue from CHRO. See, e.g.,Brightly v. Abbott Terrace Health Center, Superior Court, judicial district of Waterbury, Docket No. 158584 (February 27, 2000, Rogers, J.) The second line, which the plaintiffs ask the court to adopt, holds that when the prayer for relief seeks punitive damages and attorney's fees, an individual may bring a private suit because CHRO is unable to award such damages and, therefore, the administrative remedy is inadequate. See, e.g., Sealund v. Lexington Healthcare, Inc., Superior Court, judicial district of Danbury, Docket No. 339501 (December 27, 2000, Hiller, J.) The court also considers a third line of cases that neither the plaintiffs nor the defendants has argued.
In Dinegar v. University of New Haven, Superior Court, judicial district of New Haven at New Haven, Docket No. 378256 (October 16, 1997,Silbert, J.), the court examined the other lines of cases and stated that "[m]any, although not all, of the decisions that have allowed a plaintiff to pursue an action in the Superior Court for remedies unavailable through CHRO have involved plaintiffs who had at least taken the step of filing a claim with the CHRO prior to filing an independent civil CT Page 12658 action." The Dinegar court found that "[t]he exhaustion requirement would be totally meaningless if all a plaintiff had to do to avoid the statutorily prescribed process was to add to its prayer for relief a remedy not available to it through CHRO. In this case all the remedies the plaintiff now seeks, except punitive damages and attorney's fees, are ones which would have been available had she pursued a complaint with CHRO." Id.
Though rejecting the notion that adding a prayer for relief for attorney's fees and punitive damages makes the administrative remedy inadequate, the court went on to analyze other case law. The court found that "[t]he principle that appears to emerge from all of these cases is that plaintiffs seeking remedies not available through CHRO need not fully exhaust the complete panoply of their available administrative remedies if they have at least filed a complaint with CHRO and given that agency an opportunity to address it before filing suit. Where a plaintiff appears to be deliberately by-passing CHRO by asserting claims for relief that CHRO may not grant, however, the exhaustion doctrine should apply. If the plaintiff has at least made a good faith effort to allow CHRO to try to resolve his or her complaint, and, after that agency's decision, the plaintiff still seeks remedies that CHRO is unable to provide, he or she should not be compelled to continue to pursue a futile administrative course but should be allowed to turn to the courts. This approach is faithful to the basic principles of the exhaustion doctrine and prevents would-be plaintiffs from simply engaging in an end run around the agency by reciting a demand for remedies that he or she knows the agency is unable to provide." Id. The court finds this reasoning persuasive and adopts its holding.
In the present case, the plaintiffs brought a claim before CHRO which was administratively dismissed then brought a separate cause of action requesting, among other remedies, attorney's fees and punitive damages. Making the plaintiffs obtain a release from CHRO at this time would place an unnecessary hurdle before the plaintiffs. Because the plaintiffs made a good faith effort to pursue their claim before CHRO, this court has jurisdiction over the fourth and fifth counts of the complaint.
 B
The defendants contend that the court lacks personal jurisdiction over PGA because PGA is not subject to personal jurisdiction under Connecticut's corporate long-arm statute and because PGA does not have minimum contacts with Connecticut. "When a defendant files a motion to dismiss challenging the court's [personal] jurisdiction, a two part inquiry is required. The trial court must first decide whether the applicable state long-arm statute authorizes the assertion of jurisdiction CT Page 12659 over the [defendant]. If the statutory requirements [are] met, its second obligation [is] then to decide whether the exercise of jurisdiction over the [defendant] would violate constitutional principles of due process." (Internal quotation marks omitted.) Matto v. Dermatopathology Associatesof New York, 55 Conn. App. 592, 599-600, 739 A.2d 1284 (1999).
The plaintiffs and the defendants cite different long-arm statutes in their arguments. The defendants rely upon General Statutes § 33-929
(f) while the plaintiffs cite General Statutes § 52-59b. Section 33-929
(f) covers "[e]very foreign corporation." Section 52-59b is concerned with "any nonresident individual or foreign partnership. . . ." Clearly § 33-929 (f) is the applicable statute. Kelly's affidavit states that PGA is a Florida corporation. Moreover, the plaintiffs' complaint names "PGA Tour Construction Services, Inc." (Emphasis added.) Accordingly, the court must look to § 33-929 (f) to determine if it has personal jurisdiction over PGA.
Section 33-929 (f) provides that "[e]very foreign corporation shall be subject to suit in this state . . . whether or not such foreign corporation is transacting or has transacted business in this state and whether or not it is engaged exclusively in interstate or foreign commerce, on any cause of action arising as follows: (1) Out of any contract made in this state or to be performed in this state; (2) out of any business, solicited in this state by mail or otherwise if the corporation has repeatedly so solicited business, whether the orders or offers relating thereto were accepted within or without the state; (3) out of the production, manufacture or distribution of goods by such corporation with the reasonable expectation that such goods are to be used or consumed in this state and are so used or consumed, regardless of how or where the goods were produced, manufactured, marketed or sold or whether or not through the medium of independent contractors or dealers; or (4) out of tortious conduct in this state, whether arising out of repeated activity or single acts, and whether arising out of misfeasance or nonfeasance."
To demonstrate that the court lacks personal jurisdiction, the defendants have attached the affidavit of Vernon Kelly, Jr., the president of PGA. Kelly swears that PGA is a Florida corporation and does not have a certificate of authority to do business in Connecticut. The only dealings that PGA has had with TPC, and Connecticut, is that it managed the renovation of TPC's golf facilities from 1989 to 1991. Kelly states that PGA "does not maintain any employees, offices, warehouses, equipment, telephone numbers or bank accounts in Connecticut. Nor does [PGA] own interest in any real property in Connecticut." Moreover, Kelly states that PGA has had no other contacts with Connecticut since the 1991 renovation. CT Page 12660
The plaintiffs do not contradict this affidavit with any affidavits or other documents. Accordingly, this court will treat the affidavits as truth. See Shay v. Rossi, supra, 253 Conn. 140-41.
This court finds that the plaintiffs have not alleged a cause of action arising out of any of the acts enumerated in § 33-929 (f). The complaint does not allege a contract, or a cause of action arising from any business conducted in Connecticut, but does allege tortious conduct within Connecticut. That conduct, however, occurred in 1999. Because PGA has not had any contact with Connecticut since 1991, the cause of action cannot arise from tortious conduct committed by PGA. Accordingly, the court lacks personal jurisdiction over PGA.[4]
 III
The defendant has also made a motion to strike several counts from the complaint. Although bringing a motion to dismiss with a motion to strike violates the order of pleading; Practice Book § 10-6; this court will entertain the motion.[5]
"The purpose of a motion to strike is to challenge the legal sufficiency of the allegations of a complaint for failure to state a claim on which relief can be granted." Bennett v. Connecticut Hospice,Inc., 56 Conn. App. 134, 136, 741 A.2d 349 (1999), cert. denied,252 Conn. 938, 747 A.2d 2 (2000). "A motion to strike admits all facts well pleaded; it does not admit legal conclusions or the truth or accuracy of opinions stated in the pleadings." (Internal quotation marks omitted.) D'Amico v. Johnson, 53 Conn. App. 855, 859, 733 A.2d 855
(1999). "If facts provable in the complaint would support a cause of action, the motion to strike must be denied." Bell v. Board ofEducation, 55 Conn. App. 400, 404, 739 A.2d 321 (1999).
 A
The defendant contends that the sixth count, alleging a violation of General Statute § 46a-82, does not state a claim upon which relief may be granted. The court agrees.
The Connecticut Supreme Court has already "decided that there is no private cause of action for discrimination under General Statutes . . .46a-82 through 46a-96. Sullivan v. Board of Police Commissioners,196 Conn. 208, 216-17, 491 A.2d 1096 (1985)" Adriani v. Commission OnHuman Rights Opportunities, 220 Conn. 307, 331, 596 A.2d 426 (1991) (Dissent, Peters, C.J.) Accordingly, by alleging a violation of §46a-82, the plaintiffs have failed to state a claim upon which relief may CT Page 12661 be granted.
 B
The defendants make a motion to strike the third and ninth counts.[6]
The third and ninth counts allege violations of General Statutes §52-571d as to Susan and Brian McNamara, respectively.
Section 52-571d (b) states in pertinent part that "[n]o golf country club may deny membership in such club to any person on account of race, religion, color, national origin, ancestry, sex, marital status or sexual orientation." A "golf country club" is defined as an association of persons consisting of not less than twenty members who pay membership fees or dues and which maintains a golf course of not less than nine holes and (1) receives payment for dues, fees, use of space, facilities, services, meals or beverages, directly or indirectly, from or on behalf of nonmembers or (2) holds a permit to sell alcoholic liquor under chapter 545." General Statutes §52-571d (a). The defendant claims that it is not an association of persons within the definition of "golf country club."
"[I]n the absence of ambiguity, statutory language should be given its plain and ordinary meaning." (Internal quotation marks omitted.) PeabodyN.E., Inc. v. Department of Transportation, 250 Conn. 105, 122,735 A.2d 782 (1999). Black's Law Dictionary defines association as "The act of a number of persons in uniting together for some special purpose or business. It is a term of vague meaning used to indicate a collection or organization of persons who have joined together for a certain or common object. Also, the persons so joining; the state of being associated.
"An unincorporated society; a body of persons united and acting togther without a charter, but upon the methods and forms used by incorporated bodies for the prosecution of some common enterprise. . . . It is not a legal entity separate from the persons who compose it." Black's Law Dictionary (6th Ed. 1990). The first definition is broad, encompassing any type of organization, while the second definition is restricted to unincorporated entities, making the meaning of "association of persons" unclear.
"When the language of a statute is unclear, we may ascertain the intent of the legislature by looking beyond the language to the statute's legislative history and the purpose that the statute was intended to serve." (Internal quotation marks omitted.) Rizzo Pool Co. v. DelGrosso, 240 Conn. 58, 74, 689 A.2d 1097 (1997). The legislative history indicates that the drafters of the bill fully intended to include CT Page 12662 corporations in their definition of "association of persons." In both the House and the Senate, it was stated that the legislators understood that many golf country clubs were incorporated. 40 H.R.Proc., Pt. 6, 1997 Sess., p. 2201, remarks of Representative Scalettar; 40 S.Proc., Pt. 6, 1997 Sess., p. 1949, remarks of Senator Williams. Moreover, though the word "association" received no attention during the debate on the act, many representatives believed that this bill would reach any golf courses with nine or more holes in their courses and that have membership dues or a liquor permit. 40 H.R.Proc., supra, p. 2168, remarks of Representative Scarlettar ("[I]t's our hope and belief that there will not be a golf course with fewer than nine holes. . . .") and 40 H.R.Proc., supra, p. 2170-71, remarks of Representative Scarlettar (stating that the bill is limited because it defines a golf country club as clubs that get certain types of payments or that have a liquor permit.)
In order to fulfill the legislative intent, this court finds that the term "association of persons" in § 52-571d means incorporated as well as un-incorporated entities. Accordingly, the court finds that the plaintiffs do not have to plead that the defendant is unincorporated.
 C
The defendant asserts that the third, fourth and fifth counts fail to allege gender or marital discrimination. The complaint's alleged discriminatory conduct in those counts is that "the defendants informed the plaintiff Susan Z. McNamara in writing that she would not be permitted to use any of their facilities or services because, and only because, she is a woman who is married to the plaintiff Brian McNamara."[7] (Complaint, Count Three, ¶ 8.)
Sections 46a-58, 46a-64 and 52-571d all provide that it shall be a discriminatory practice to deny a person of rights or access to public accommodations or a golf country club, simply upon the basis of gender. The complaint states that "because and only because" of her gender and her marriage to Brian McNamara, the defendant rejected her application. (Emphasis added.) Construing the allegations in the most favorable manner for the plaintiffs, the defendant rejected the plaintiff's application solely because she was a woman married to Brian McNamara. Accordingly, the third, fourth and fifth counts make out a sufficient claim of gender discrimination.[8]
 D
The defendant also contends that the first, second, seventh and eighth counts of the plaintiffs' complaint have failed to allege extreme and outrageous conduct. The first and seventh counts allege intentional CT Page 12663 infliction of emotional distress as to Susan and Brian McNamara, respectively. The second and eighth counts allege negligent infliction of emotional distress as to Susan and Brian McNamara, respectively.
 1
The defendant wishes to apply the requirement of extreme and outrageous conduct to negligent infliction of emotional distress, citing Muniz v.Kravis, 59 Conn. App. 704, 709, 757 A.2d 1207 (2000). In Muniz, the court stated "[t]he elements of negligent and intentional infliction of emotional distress differ as to the state of mind of the actor and not to the conduct claimed to be extreme and outrageous." Id.
Though this lone statement in Muniz would seem to make extreme and outrageous conduct an element of intentional infliction of emotional distress, this court notes that the statement is dicta because Muniz did not discuss negligent infliction of emotional distress but instead was concerned with intentional infliction of emotional distress. Moreover, the statement was made by the Appellate Court so that it could draw an analogy from a negligent infliction case and compare it to the intentional infliction case before it. Finally, this court has sought Connecticut decisional law that applies extreme and outrageous conduct to negligent infliction of emotional distress but has been unable to find any that do so. Absent clear authority from the Appellate or Supreme Court, this court shall not apply the extreme and outrageous conduct requirement to negligent infliction of emotional distress.
 2
Though this court declines to apply extreme and outrageous conduct to negligent infliction of emotional distress, the defendant also contends that the plaintiffs have not alleged any of the elements of intentional infliction of emotional distress, including extreme and outrageous conduct. This court agrees.
"For [a party] to prevail on a claim of intentional infliction of emotional distress, four elements must be established. It must be shown: (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the . . . conduct was the cause of the [party's] distress; and (4) that the emotional distress sustained by the [party] was severe. . . . Liability for intentional infliction of emotional distress requires conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind." (Citations omitted; internal quotation marks CT Page 12664 omitted.) Biro v. Hirsch, 62 Conn. App. 11, 20, 771 A.2d 129, cert. denied, 256 Conn. 908, 772 A.2d 601 (2001).
The two counts alleging intentional infliction of emotional distress both rely upon the same facts. Although one count is brought by Brian McNamara, both counts are based upon the defendant sending the membership rejection letter to Susan McNamara. Neither count makes any additional allegation other than that the conduct was "extreme and outrageous and was carried out with the knowledge that [the conduct] would, or probably would, cause the plaintiff to suffer severe emotional distress." (Complaint, Counts One and Seven, ¶ 10.)
The complaint does not allege extreme and outrageous conduct. At most, the plaintiffs have alleged that the conduct was discriminatory and, thus, tortious. "It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by `malice'. . . ." Hiers v. Cohen, 31 Conn. Sup. 305,308, 329 A.2d 609 (1973), quoting Restatement of Torts (Second), § 46. The present case resembles another case in which a judge of the Superior Court struck a claim of intentional emotional distress when the plaintiff alleged that he was not hired because of age discrimination.Dixon v. Yale University, Superior Court, judicial district of New Haven, Docket No. 396723 (August 4, 1999, Levin, J.) If the allegation of denial of employment is not extreme and outrageous, then an allegation that the defendant denied the plaintiffs a luxury would not be extreme and outrageous conduct.
The seventh count, alleging intentional infliction of emotional distress directed at Brian McNamara, contains and additional infirmity because it fails to allege that the defendant intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of its conduct upon Brian McNamara. The only acts alleged in the seventh count concern a letter addressed to Susan McNamara that rejected Susan McNamara's membership application. Absent other facts, the seventh count fails to allege how the defendant knew or should have known that Brian McNamara would suffer emotional distress. Accordingly, the first and the seventh counts fail to allege a claim for intentional infliction of emotional distress.
 IV
The court ought to and hereby grants the motion to dismiss TPC for lack of personal jurisdiction. The court ought to and hereby denies the motion to dismiss the fourth and fifth counts. CT Page 12665
The court ought to and hereby grants the motion to strike the first, sixth and seventh counts for failure to sufficiently allege facts upon which relief may be granted. The court ought to and hereby denies the motion to strike the second, third, fourth, fifth and ninth counts.
It is so ordered.
By the court
GILARDI, J.