[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
The plaintiff, Joan Carnemolla (Carnemolla) filed a three count revised complaint against the defendants, Mark Walsh, Robert Walsh and Walsh's Market, L.L.C. Count one of the revised complaint alleges wrongful discharge. Count two alleges intentional infliction of emotional distress. Count three alleges attempted extortion. These allegations stem from the circumstances surrounding Carnemolla's termination from the defendants' employ. The defendants have now moved for summary judgment on all three counts.
 FACTS
Carnemolla was hired by Robert Walsh in 1977, as a part-time accounts receivable clerk at Walsh's Market. Carnemolla was paid on an hourly basis. Carnemolla alleges that in the spring of 1996, she was informed by Walsh's Market's operating accountant, Rick Champagne (Champagne), that her monthly premiums for her health insurance coverage were increasing. Carnemolla alleges that she then told Champagne the increase was unaffordable and she would seek employment elsewhere. Carnemolla alleges that Robert Walsh told Champagne to do whatever necessary to retain her as an employee. Carnemolla alleges that Champagne told Robert Walsh that he would add additional hours to Carnemolla's paycheck (hours she did not work) to increase her gross pay, which would cover the payment for the increase in insurance costs. Carnemolla claims that Robert Walsh was fully aware of this arrangement and it constituted a contract between Robert Walsh and her. The defendants assert that this arrangement was between Carnemolla and Champagne and deny any knowledge of its existence. Robert Walsh allegedly became aware of the arrangement during the summer of 1999. He discussed the matter with his son, Mark Walsh, then contacted an attorney and met with Champagne. At the meeting, the defendants allege that Champagne admitted that he had misappropriated company funds for the past four years on behalf of Carnemolla and his daughter, who was also employed by the defendants. Champagne then agreed CT Page 15293 to resign and make restitution.
The defendants and their attorney then met with Carnemolla who, at the defendants' request, signed a letter of resignation dated August 24, 1999. Carnemolla alleges that the defendants demanded she pay restitution and informed her that if she refused, they would file criminal charges against her. Allegedly, all further attempts to resolve this situation amicably were unsuccessful. The defendants then filed criminal charges against Carnemolla stemming from the arrangement between her and Champagne.
Carnemolla was charged with larceny in the first degree in violation of General Statutes § 53a-122 (a)(2) and conspiracy to commit larceny in the first degree, in violation of General Statutes § 53a-48 (a) and53a-122.[1] On February 28, 2001, following a criminal trial by jury, Carnemolla was found guilty of both crimes. On April 19, 2001, Carnemolla was sentenced by the court (Moore, J.).[2]
On June 25, 2001, the defendants filed a motion for summary judgment as to all three counts of Carnemolla's three count revised complaint and a memorandum of law in support thereof. In support of their motion for summary judgment, the defendants argue that there are no genuine issues of material fact and therefore they are entitled to judgment as a matter of law. Additionally, the defendants challenge Carnemolla's prayer for relief arguing that she is not entitled to attorney's fees.
 DISCUSSION
"Practice Book [§ 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence [of] any genuine issue of material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Internal quotation marks omitted.) Community Action for GreaterMiddlesex County, Inc. v. American Alliance Ins. Co., 254 Conn. 387,397-98, 757 A.2d 1074 (2000). "A genuine issue has been variously described as a triable, substantial or real issue of fact . . . and has been defined as one which can be maintained by substantial evidence." (Citations omitted; internal quotation marks omitted.) United Oil v.Urban Development Commission, 158 Conn. 364, 378, 260 A.2d 596 (1969). "A CT Page 15294 material fact has been defined adequately and simply as a fact which will make a difference in the result of the case." (Internal quotation marks omitted.) Id., 379. "In ruling on a motion for summary judgment, the court's function is not to decide issues of material fact, but rather to determine whether any such issues exist." Nolan v. Borkowski,206 Conn. 495, 500, 538 A.2d 1031 (1988).
I. Wrongful Discharge
Count one of Carnemolla's revised complaint alleges wrongful discharge. Specifically, Carnemolla asserts that her discharge violated the contract she claims she had with Robert Walsh that structured her pay to deduct the premium on her health insurance. In opposition, the defendants argue (1) the guilty verdict in Carnemolla's criminal trial means the jury found that there was no such contract, and therefore the doctrine of collateral estoppel prevents her from asserting that this contract existed and from denying she stole the money from the defendants: (2) count one fails to state a claim upon which relief can be granted because Carnemolla was an at-will employee and the defendants did not violate any public policy in terminating her; and (3) an at-will employee cannot pursue an action for breach of the implied covenant of good faith and fair dealing unless the employer's conduct in dismissing the employee violates public policy, which in this case it clearly did not.
A claim of wrongful discharge requires that the claimant have contract rights beyond at-will employment or that the employer's conduct in terminating the claimant violated an important public policy. Sheets v.Teddy's Frosted Foods, Inc., 179 Conn. 471, 474-80, 427 A.2d 385 (1980). "In Connecticut, an employer and employee have an at-will employment relationship in the absence of a contract to the contrary." Thibodeauv. Design Group One Architects, 64 Conn. App. 573, 577, ___ A.2d ___
(2001).
Carnemolla asserts that Robert Walsh knew about the arrangement she had with Champagne to compensate her for hours she had not worked to cover the cost of the health insurance premiums. Carnemolla also asserts that she remained employed at Walsh's Market because of this arrangement, as she could not otherwise afford to pay the premiums. Even upon viewing these allegations in the light most favorable to Carnemolla, there is no genuine issue of material fact as to whether an employment contract existed. Carnemolla does not provide any evidence that she and the defendants engaged in negotiations regarding the term of her employment, that she had a written contract that required just cause for termination or that the defendants ever told her that she could only be terminated for cause. Carnemolla was therefore an at-will employee whom the CT Page 15295 defendants could legally terminate at any time, providing they did not violate public policy in so doing.
"[T]he public policy exception to the general rule allowing unfettered termination of an at-will employment relationship is a narrow one . . . courts should not lightly intervene to impair the exercise of managerial discretion or to ferment unwarranted litigation. . . . The cases which have established a tort or contract remedy for employees discharged for reasons violative of public policy have relied upon the fact that in the context of their case the employee was otherwise without remedy and that permitting the discharge to go unredressed would leave a valuable social policy to go unvindicated." (Citations omitted; internal quotation marks omitted.) Burnham v. Karl Gelb, P.C., 252 Conn. 153, 159-60, 745 A.2d 178
(2000).
There is no evidence that the defendants violated public policy in terminating her. The defendants assert that they dismissed Carnemolla upon learning that she was allegedly stealing from the company. In Morrisv. Hartford Courant Co., 200 Conn. 676, 513 A.2d 66 (1986), the defendant employer terminated the plaintiff employee for misappropriation of company funds. The plaintiff brought an action for wrongful discharge, alleging that his employer's false accusations of criminal conduct violated public policy. Our Supreme Court held that the employer's accusation of criminal conduct does not violate public policy and denied the plaintiff's requested relief Id. Nothing surrounding the circumstances of Carnemolla's termination suggests that a "valuable social policy" would go unvindicated by permitting her discharge to go unredressed. Carnemolla was an at-will employee and the defendants did not violate public policy in terminating her from their employ.[3]
There is no evidence of an existence of any genuine issue of material fact and therefore, the defendants are entitled to judgment as a matter of law. The motion for summary judgment as to count one of Carnemolla's revised complaint is granted.
II. Intentional Infliction of Emotional Distress
Count two of the revised complaint alleges intentional infliction of emotional distress. Carnemolla asserts that the defendants intentionally inflicted distress upon her when they terminated her from their employ. She claims that the termination and the rumors surrounding it caused her physical and emotional distress requiring medical treatment. In response, the defendants argue that summary judgment should be granted as to this count because there is no genuine issue of material fact as to whether the defendants' behavior was extreme and outrageous.
In an action for intentional infliction of emotional distress, four CT Page 15296 elements must be satisfied. "It must be shown: (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe. "All four elements must be established to prevail on a claim for intentional infliction of emotional distress." Biro v. Hirsch, 62 Conn. App. 11, 20,771 A.2d 129, cert. denied, 256 Conn. 908, ___ A.2d ___ (2001).
Whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine. Only where reasonable minds disagree does it become an issue for the jury. . . . Liability has been found only where the conduct. has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency. and to be regarded as atrocious, and utterly intolerable in a civilized community. . . . Conduct on the part of the defendant that is merely insulting or displays bad manners or results in hurt feelings is insufficient to form the basis for an action based upon intentional infliction of emotional distress." (Citations omitted; internal quotation marks omitted.) Appleton v. Boardof Education of Stonington, 254 Conn. 205, 210-11, 757 A.2d 1059 (2000). "In Appleton, the plaintiff teacher alleged that the defendants (1) subjected her to condescending comments in front of her colleagues, (2) subjected her to two psychiatric examinations, (3) told her daughter that the plaintiff was acting differently and should take a few days off from work, (4) had police escort the plaintiff out of the school, and (5) suspended her employment and ultimately forced her to resign. Our Supreme Court concluded that the "defendants' actions . . . were not so atrocious as to exceed all bounds usually tolerated by decent society, [and] their conduct [was] insufficient to form the basis of an action for intentional infliction of emotional distress." Dollard v. Board of Education,63 Conn. App. 550, 554, ___ A.2d ___ (2001).
Count two of Carnemolla's revised complaint does not even allege that the defendants' conduct was extreme and outrageous. The allegations she sets forth assert only that the defendants' conduct was intentional. Furthermore, this court finds no evidence that any conduct on the part of the defendants was extreme or outrageous. Accordingly, the defendants' motion for summary judgment as to count two of Carnemolla's revised complaint is granted.
III. Attempted Extortion
Count three of Carnemolla's revised complaint alleges that the defendants engaged in attempted extortion in violation of General CT Page 15297 Statutes § 53a-119 (5)(D).[4] Carnemolla alleges that the defendants demanded she pay restitution and if she refused, they would file criminal charges against her. Carnemolla argues that these actions were illegal and amounted to attempted extortion. Although the defendants deny this specific allegation, they argue that there is no statutory prohibition against crime victims seeking restitution from the wrongdoer before pursuing criminal or civil charges against the wrongdoer. Specifically, the defendants assert that asking Carnemolla to pay restitution of the exact amount owed is not extortion. The defendants further assert that this count provides no civil remedy, as it is a provision of the criminal code.
This court is not aware of any case law that provides a civil remedy for attempted extortion in violation of General Statutes § 53a-119
(5)(D). Therefore, there is an absence of any genuine issue of material fact as to whether count three of Carnemolla's three count revised complaint states a legally cognizable cause of action.
"Connecticut courts have permitted the use of the motion for summary judgment to contest the legal sufficiency of a complaint, even though the sufficiency is more appropriately challenged by a motion to strike." Orrv. Hartford Accident Indemnity, Superior Court, Judicial District of New Britain, Docket No. 482838 (July 12, 1999, Robinson, J.) (25 Conn. L. Rptr. 122). "The defendants' motion for summary judgment was a proper way to test the legal sufficiency of this count of the second amended complaint." Drahan v. Board of Education,42 Conn. App. 480, 498 n. 17, 680 A.2d 316, cert. denied,239 Conn. 921, 682 A.2d 1000 (1996)). See also, Boucher Agency, Inc. v. Zimmer, 160 Conn. 404, 409, 279 A.2d 540
(1971).
"It is incumbent on a plaintiff to allege some recognizable cause of action in his complaint. If he fails so to do, it is not the burden of the defendant to attempt to correct the deficiency, either by motion, demurrer or otherwise." Brill v. Ulrey, 159 Conn. 371, 374, 269 A.2d 262
(1970).
The defendants' motion for summary judgment may be used to challenge the legal sufficiency of count three of Carnemolla's complaint. The defendants' motion for summary judgment as to count three of the revised complaint is granted.
IV. Conclusion
For all the foregoing reasons, the defendants' motion for summary judgment as to counts one, two and three of the plaintiff's revised CT Page 15298 complaint is granted.
CHASE T. ROGERS SUPERIOR COURT JUDGE